GEORGE ROLLER v. A. P. WOOLDRIDGE, ASSIGNEE, &c.

| 46 | 485 |
|----|-----|
| 74 | 281 |
| 46 | 485 |
| 82 | 231 |

1. CONSIDERATION—CONTRACT—CONFEDERATE NOTES.—A loan of Confederate States treasury notes constituted a valuable consideration upon which to sustain a contract.

2. PRACTICE—NEW TRIAL.—If the petition of one against whom a judgment has been rendered in an ordinary action at law, states good equitable grounds for setting aside the judgment, exceptions to it, for want of equity, should be overruled, not for the purpose of granting a new trial in the former proceeding, but that the pending proceeding in equity might be tried as an original proceeding, seeking relief against a judgment at law. If the equitable grounds set forth are not sufficient to set aside the judgment, the petition would be dismissed on exceptions, and the former judgment left in force to be executed as a valid judgment.

3. PRACTICE—TRIAL BY JURY.—In an equitable proceeding to set aside a judgment rendered in a proceeding at law, the practice of having two trials—one to determine whether the judgment shall be set aside, and the other to retry the original suit after the judgment rendered in it has been set aside—is not adapted to our mode of procedure, in which all the material facts must be submitted to a jury, when the same is demanded, whether the suit involves matters of law or equity.

4. JUDGMENT.—A proceeding in equity, to set aside a judgment rendered in an ordinary action at law, cannot be maintained on the ground of irregularity, committed in the proceedings on which the judgment was rendered; a substantial injury must be shown.

5. ATTORNEY.—Although an attorney at law, as such, has, strictly speaking, no right to make a compromise, yet a court will be disinclined to disturb one, which was not so unreasonable in itself as to be exclaimed against by all, and to create the impression that the attorney's judgment had been imposed upon, or not fairly exercised. The conduct of the party seeking to be relieved against his attorney should have been perfectly blameless.

6. PLEADING—JUDGMENT.—A petition in equity, which seeks to enjoin a judgment, upon the ground that the plaintiff's counsel had, in the proceedings on which the judgment was rendered, consented, without authority, to give a lien upon land upon a part of which the plaintiff alleged his homestead was situated, would, if true, entitle him to be relieved, if at all, only to the extent of the homestead. As to the other lands specified in the judgment, it might, in the absence of averment to the contrary, have been a lien, without it being so stipulated in the judgment.

APPEAL from Freestone. Tried below before the Hon. John B. Rector.

Robert Adams executed his note to George Roller, the appellant, for the sum of $7,000, due one day after date, with six per cent. interest from date, dated in July, 1862.

In 1865, a credit of $1,400 was entered on the note, and on October 15, 1866, Roller brought suit on it, against Adams, in the District Court of Freestone county, for the balance due.

Adams answered, that the note was given for Confederate money, and that the payment he had made on the note, of $1,000, specie, equal to $1,400, currency, had more than paid the note. He asked for judgment for the balance due him, and claimed, also, damages in reconvention, against Roller, to the amount of $10,000, for having brought suit on this note He further pleaded, that, at the maturity of the note, Confederate money was worth twenty for one, but he did not attack the consideration, as illegal.

On November 10, 1866, by written agreement between the attorneys of Roller and Adams, a judgment by default was taken in favor of Roller, against Adams, for $7,000, currency, without interest, for four years, and a stay of execution for that period, with a special lien reserved, by agreement, in favor of Roller, on 1,599 acres of land in Freestone county.

On July 2, 1868, Adams filed an original bill, in the nature of a bill for a new trial, for the purpose of canceling and setting aside the judgment rendered against him. The grounds set up for vacating the judgment and granting a new trial, were, that as the note was given for Confederate money, the whole transaction was tainted with illegality; that the act of November 10, 1866, (Paschal's Dig., art. 7440,) providing for the value of Confederate money to be ascertained and made the basis of judicial proceedings, was null and void, contrary to the Constitution of the United States and to public policy, and that the agreement under which the judgment was ren-

dered was also null and void, and entered into by his attorneys without his knowledge or consent.

Adams also filed the affidavit of one of his attorneys, that he had made the agreement for him without his knowledge, but believing it to be the best course for him.

Roller filed a general and special demurrer to this petition for a new trial. He also filed an answer, setting up, that the judgment was rendered with the full knowledge and consent of Adams; and that he, Adams, had himself drafted its outlines, as it was charged, appeared from a memorandum of Adams, marked Exhibit A, in his handwriting; and that his attorney knew this, and that, in the former suit, he had plead that Confederate money was not worth more than twenty for one, and that he had an opportunity to prove this, but had failed to do so. Roller further alleged that Adams borrowed this money from him to buy, of one Mr. Huckaby, the same land on which the lien was retained in the judgment.

The demurrer of Roller was overruled on the 8th of March, 1869, at which time a bill of exceptions was taken to this action of the court. At the next term, a motion was made to reopen the argument on the demurrer, and, on this reargument, at the February Term, 1870, the former ruling was set aside, the demurrer sustained, and the bill for a new trial dismissed.

From this final judgment, dismissing the bill, Adams having in the meanwhile become a bankrupt, one Standifer sued out a writ of error to this court, pending which he ceased to be assignee, and Rowand was substituted for him, who was succeeded by Wooldridge.

On the 19th of March, 1872, the Supreme Court reversed the case and remanded it for a new trial. (Adams *v.* Roller, 35 Tex., 711.)

The opinion in that case seems chiefly based upon the idea that the judgment entered by consent was not such a judgment as the attorneys of Adams had the power to enter, and that it was null and void.

On the return of the case to the District Court, Roller moved to dismiss it, which was overruled.

On the 17th of May, 1872, the cause again came up for trial, when, as appears from the appellant's bill of exceptions, the court below having overruled the appellant's motion to dismiss and his demurrers to the petition, refused to allow him a jury in the case, and proceeded to try the bill for a new trial, without one.

The appellant moved for a new trial, which was refused.

On May 17, 1872, the assignee set up, in an amended answer, the defense, that Confederate money was an unlawful consideration for a contract, and to this defense Adams himself came forward and made oath.

There was a trial on the 23d of August, 1872, and a verdict and judgment in favor of Roller. A new trial was granted, and the case again tried December 21, 1872, when, for the third time, a judgment was rendered in favor of Roller, which the court again set aside.

On the 12th of August, 1873, the case was again tried, and a jury gave a verdict against the appellant, on which a judgment was entered dismissing the cause, to correct which the writ of error in this cause was sued out.

*Hancock, West & North,* for plaintiff in error.—The petition for a new trial, by which Adams sought to escape from the effect of the judgment of November 10, 1866, was manifestly insufficient in its averments for the purposes intended. It charged no fraud or collusion. It showed on its face inexcusable *laches* and delay on the part of Adams, he not having moved for nearly two years, when he knew of the judgment a few weeks after its rendition. It showed on its face that Adams was justly indebted to Roller for the value of the Confederate money, while he tendered back no money, offered to pay nothing, but sought to defeat the payment of the whole debt by asserting its illegality and denying his liability for any amount. (1 Story's Eq., sec. 64e.)

The argument of our associate, incorporated in the record, is full and satisfactory on this point.    The following authorities show the insufficiency of the petition: Goss *v.* McClaren, 17 Tex., 107; Vardeman *v.* Edwards, 21 Tex., 742; Burnley *v.* Rice, 21 Tex., 180; Steinlein *v.* Dial, 10 Tex., 268; Gregg *v.* Bankhead, 22 Tex., 252; Cook *v.* De la Garza, 13 Tex., 444; Spencer *v.* Kinnard, 12 Tex., 180; Metzger *v.* Wendler, 35 Tex., 379; Ragsdale *v.* Green, 36 Tex., 194; Fisk *v.* Miller, 20 Tex., 572; Caperton *v.* Wanslow, 18 Tex., 125; 1 Bac. Ab., title Attorney, letter C, 487–491; 1 Bouvier Law Dic., 140.

The case of Holker *v.* Parker, 7 Cranch, 436, cited in the former opinion, will be found, on an examination of the facts of the case as set forth, to be inapplicable to the case at bar, and we trust the court will carefully consider the facts in that case.    The following authorities are believed to be conclusive in our favor: Dunman *v.* Hartwell, 9 Tex., 496; Cayce *v.* Powell, 20 Tex., 767, (a strong case in point;) Storey *v.* Nichols, 22 Tex., 90; Hopkins *v.* Donaho, 4 Tex., 337; Pierson *v.* Burney, 15 Tex., 273; Cartwright *v.* Roff, 1 Tex., 81; Prewitt *v.* Perry, 6 Tex., 262; Wheeler *v.* Pope, 5 Tex., 263; Burton *v.* Lawrence, 4 Tex., 374; Merritt *v.* Clow, 2 Tex., 582.*

There are other palpable errors, such as the refusal of the court to allow Roller the benefit of a jury.    (See the case of Russell *v.* Miller, MSS. Op., at this term, by Judge Reeves, delivered May 5, 1874, No. 1855, from Houston county, as to refusing a jury when one is demanded.)

But as Adams has become a bankrupt, unless Roller can be protected by his judgment of November 10, 1866, he will lose his debt.    This would be a great hardship on him, for it

---

*Note.—We omit the able argument of counsel antagonizing what was, at the time of filing their brief, the decision of the court as formerly constituted, in regard to contracts based on Confederate money.    The views of counsel have been so often on this subject sustained by the present court, that we omit their argument.

appears from the record that he took the Confederate money, at par, for debts due him; that he loaned it to Adams, and Adams paid the money to Huckaby for the very land on which the judgment is a lien.

If, now, Adams can hold Huckaby's land, and escape the payment of his debt to Roller, he will get his land for nothing. Certainly he has no equity on his side, and does not appear in an enviable light in the record.

*Theodore Jones,* also for plaintiff in error, on the question of the power of an attorney to consent to a judgment, cited Paxton *v.* Cobb, 2 La., 140; Cartwright *v.* Roff, 1 Tex., 81; Burton *v.* Lawrence, 4 Tex., 373; Prewitt *v.* Perry, 6 Tex., 262; Burton *v.* Varnell, 1 Tex., 635. He maintained that the judgment agreed to by the attorney cannot, in the absence of fraud, be impeached by a mere allegation of want of authority in the attorney, his client being estopped, by the judgment of the court, from denying his authority, citing Cannon *v.* Hemphill, 7 Tex., 184–203; Dunman *v.* Hartwell, 9 Tex., 495, 496; Cayce *v.* Powell, 20 Tex., 767; Baxter *v.* Dear, 24 Tex., 17–21.

*Walton, Green & Hill,* for defendant in error.—From every definition of the elementary writers, and by the decision of our own court, we must conclude that the judgment first appealed from was a final judgment, as it dismissed the petition and put an end to the suit. (Freeman, sec. 16.)

A reversal, therefore, of such final judgment must be final in its nature, so far as the questions necessary to the decision were passed upon by the appellate court; and all that was left to be done, upon the remanding of the cause to the District Court, was for that court to carry out the judgment of the appellate tribunal; and such a judgment is so potent, that the Supreme Court itself cannot reinvestigate the question decided.

The question here discussed is well stated by Freeman, sec.

267.    Speaking of judgments on demurrer, he says, that such a judgment " is conclusive of everything necessarily determined by such judgment;" that such a judgment may be on the merits, and " if so, its effect is as conclusive as though the facts set forth in the complaint were admitted by the parties or established by evidence;" that, as no action could be maintained by the plaintiff on the same facts in case judgment be against him, so, "if any court err in sustaining a demurrer and entering judgment for defendant thereon, when the complaint is sufficient, the judgment is nevertheless 'on the merits.' It is final and conclusive until reversed on appeal."

As a result, the reversal of such a judgment carries the same force and consequence with it.

In the case of Chambers *v.* Hodges, 3 Tex., 528, Justice Wheeler, commenting on the effect of judgments in the Supreme Court, says: "That inferior courts could not vary the decree or examine it for any other purpose than execution, or give any other or further relief, or revise it upon any matter decided on appeal for error apparent, or intermeddle with it, further than to settle so much as has been remanded:" citing, 3 Dow., P. C., 157; Himely *v.* Rose, 5 Cranch, 316; Browder *v.* M'Arthur, 7 Wheat., 58; The Santa Maria, 10 Wheat., 443.

This principle is fully sustained, by reason as well as authority.. Nor can this court review or revise its own judgments, after the term, except for clerical errors, or they be void for want of jurisdiction. (Chambers *v.* Hodges, 3 Tex., 528, and authorities cited.) The learned judge, in that case, states the reason of the rule forcibly. He says: "There must be some period at which litigation shall cease, and controverted rights be formally disposed of and settled, and this period seems, on principle, to be cotemporaneous with the accomplishment of the act for which the power has been exerted."

What have we here, then? We answer, a reversal upon

the questions, not only of the propriety, but sufficiency of the petition for a new trial; a judgment which decides necessarily that if the facts stated in the petition be proved, the agreement between the attorneys for the judgment rendered was totally unauthorized, and would be ground for setting aside the judgment of 1866; also, that the equities stated in the bill were good, if proved, and that Confederate money was not a consideration for a contract.

There was nothing left, upon the reversal, to be done, but that the court below should carry out the judgment of the Supreme Court; and nothing remains now in the present appeal but to determine whether the decree of the Supreme Court has been executed.

Independently, however, of the rule we have been discussing, we think the decision of the Supreme Court in the former case was proper.

Justice Wheeler, in Merritt *v.* Clow, 2 Tex., 588, commenting on the opinion of the majority of the court, in Denton *v.* Noyes, 6 Johns. R., 295, says: "But a different doctrine has been maintained elsewhere, and, we think, with much better reason;" and the court conclude that the attorney will be presumed to have authority, but his want of authority may be shown, and will be cause for setting aside the judgment.

In the case of Denman *v.* Hartwell, 9 Tex., 496, it appeared the agreement was made by the attorneys, but no objection was raised on that ground. No question was raised as to their power; and the court say: "That they had competent authority, must be presumed, until it is impugned, and the contrary appears; * * * and the judgment must be taken as having been agreed to by the parties themselves."

The language of this case affirms the doctrine laid down in Merritt *v.* Clow, and shows that, in a direct proceeding, the authority of the attorney may be impugned, and his want of authority be shown. (Freem. on Judg., sec. 128; Shumway *v.* Stillman, 6 Wend., 453; Sharp *v.* Mayor of New York, 31 Barb., 578; Hess *v.* Cole, 3 Zabr., 125; Shelton *v.*

Tiffin, 6 How., (U. S.,) 186; Watson v. Hopkins, 27 Tex., 642; Holker v. Parker, 7 Cranch, 436.)

Counsel discussed at length the authorities cited by plaintiff in error; also, the Confederate treasury-notes question.

ROBERTS, CHIEF JUSTICE.—The plaintiff in error obtained a judgment against Robert Adams, in the District Court, on the 15th day of October, 1866, for the sum of seven thousand dollars, in United States currency, and for a lien on certain lands, (1599 acres,) with a stay of execution for four years, without bearing interest during that time. On the 2d day of July, 1868, the said Adams filed a petition, asking the court to set aside said judgment and grant him a new trial, on the grounds that the note upon which said judgment was rendered, was executed for and in consideration of the loan of that amount of Confederate treasury notes, and was payable in said currency, though not so expressed in the note, and that the attorneys, whom he employed to make his defense in the suit, in which said judgment was rendered, consented and agreed to said judgment without any authority from him to make any such agreement, and that he had never ratified the same as an agreement binding upon him.

In an amendment, he alleged further, that the attorney for the plaintiff was informed by his counsel that they had no such authority; and that he took said judgment, by their consent, upon the risk that the said agreement should be ratified by him; and that he had objected to it when first informed of it, and had never ratified it.

Roller filed general and special exceptions to this petition; and also set up in his answer, facts in opposition to it.

Without detailing the matters that transpired previously, the court finally overruled the exceptions, heard and determined the facts without a jury, set aside the judgment that had been rendered in favor of Roller, and granted a new trial in said cause. To all this, Roller excepted, as appears by bill of exceptions in the transcript.

The original cause having been redocketed, the defendant therein, the assignee of Adams, who had been made a party, filed an amended answer, which stated, in substance, that the note sued on was executed for the loan of Confederate States treasury notes, and was payable in said currency. Roller excepted to this answer as insufficient, and his exception was overruled. Upon the trial of the case, upon the issue presented by this answer, and the facts being proved by the evidence of Adams as therein alleged, a verdict was rendered for the defendant, and judgment rendered against Roller, that he take nothing by his suit, and pay the cost.

In the case of Mathews *v.* Rucker, it was decided by this court that a contract was not void because it was payable in Confederate treasury notes, from which it would also follow that such notes would be a valuable consideration upon which to sustain a contract. (41 Tex., 636; Thorington *v.* Smith, 8 Wall., 1.)

Therefore, the exceptions to the answer, as pleaded in this new trial, should have been sustained. Not being good as an entire defense to the action, to make it available as a partial defense, it should have stated further, the value of such treasury notes. But the proof made and the charge given, show that the case was decided wholly upon the illegality of the contract, because the consideration upon which it was based was the loan of Confederate treasury notes.

The mode of proceeding, in granting the new trial, was also erroneous. If Adams, in his petition, had stated good, equitable grounds for setting aside the judgment, which was a judgment in an ordinary action at law, the exceptions to it for want of ·equity should have been overruled, not for the purpose of granting a new trial, but that this suit in equity, as an original proceeding, for relief against a judgment at law, might be tried as any other suit, seeking equitable relief. The rule here announced was definitely settled by this court, in the case of Taylor, Knapp & Co. *v.* Fore, 42 Tex., 256.

If, on the other hand, the equitable grounds set forth in

the petition were not sufficient to set aside the judgment, upon its being excepted to and dismissed for want of equity, the judgment would be left standing, to be executed as a valid judgment.

In the case last cited, the authority of both Kent and Story is shown against the mode of proceeding adopted in this case, of having two trials, one to determine whether or not the judgment shall be set aside, and the other, to retry the original suit after the judgment in it has been set aside. It is certainly not adapted to our mode of trials, wherein all of the material facts may have to be submitted to a jury, when demanded, whether the suit involves matters of law or equity.

The question remains to be considered, were there sufficient equitable grounds set out in the petition of Adams, to set aside the judgment that he complained of.

Any mere irregularity in the mode of procuring the judgment is not sufficient. A substantial injury must be shown. Hence it is said by Chief Justice Marshall, that "although an attorney-at-law, merely as such, has, strictly speaking, no right to make a compromise, yet a court would be disinclined to disturb one, which was not so unreasonable in itself, as to be exclaimed against by all, and to create an impression that the attorney's judgment had been imposed on, or not fairly exercised; and the conduct of the party seeking to be relieved against the compromise of his attorney, should have been perfectly blameless." (Holker *v.* Parker, 7 Cranch., 436.)

It is evident that the main ground of injury complained of was, in having a judgment rendered against him on a note that was wholly illegal and void, because it was given for Confederate treasury notes. He does not allege, in the petition, that such notes, at the time the note was given and fell due, were, in the market, worthless, or so far below par as that the arrangement made by his counsel for him was injurious to his interests. Under the rule now enforced in this court, as well as in the Supreme Court of the United States, there is nothing stated in the petition on this subject that

shows otherwise than that it was in fact greatly to his advantage.

The only other ground of injury that he could complain of was, that his counsel had consented, without authority, to give a lien upon land upon which he alleges that his homestead was situated.  For, upon the other land, the judgment may have been a lien, without it being stipulated in the judgment.  To that extent he might, in equity, be entitled to have the judgment enjoined, without interfering with the other provisions of it.

Inasmuch as this case has not been brought and tried in the court below, upon rules of law and of procedure now held by this court to be correct, it is deemed proper to remand it, so that, if, in accordance with the rules here laid down, a substantial injury can be alleged, (in addition to the other equitable facts that have been alleged,) and shown by proof, the party complaining may have the opportunity of doing it, and obtain the appropriate remedy. (Taylor v. Fore, 42 Tex., 256.)

For the errors that have been pointed out, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.