E. J. WILLIAMS ET AL. v. KATE NOLAN.

(Case No. 1571.)

1. PARTIES — PRACTICE.— To authorize a re-examination of a case at a term subsequent to that during which the judgment which is sought to be set aside was rendered, all the parties to the former proceeding must be made parties; nor is this rule affected by the fact that the judgment was entered on an unauthorized agreement made by one of the attorneys in the former suit. All are necessary parties who were affected by the judgment based on such agreement.

2. PLEADING — SETTING ASIDE FORMER JUDGMENT.— A plaintiff who seeks to set aside a former judgment, based on an alleged unauthorized agreement of counsel, must set forth specifically the nature of the agreement, that the court may determine whether the plaintiff has received injury requiring relief. A substantial injury must be shown; for though the attorney, as such, may not have been authorized to make the agreement, a court will not disturb the judgment, unless the agreement was so unreasonable in itself as to be manifestly unjust, and to create the impression that the attorney's judgment had been imposed on, or not fairly exercised, and the party seeking to be relieved against the compromise must show that he was blameless.

3. SAME.— A court of equity will only set aside a judgment rendered upon an unauthorized agreement of counsel, when injury has resulted therefrom to the party complaining.

4. COMPROMISE AGREEMENT OF COUNSEL — JUDGMENT.— Every reasonable presumption will be indulged in favor of a settlement made by an attorney duly employed, especially after it has been recognized by a court and a judgment thereon has been rendered.

APPEAL from Fort Bend. Tried below before the Hon. Wm. H. Burkhart.

In a suit for four hundred and fifty acres of land in Fort Bend county, instituted by appellants, the children of Wm. G. Nolan, deceased, by his first wife, against appellee, his second wife, and their children, judgment was rendered by the court without a jury, at the October term, 1880, decreeing the fee in the land to appellants, with the right to use and occupy two hundred acres embracing the homestead, during her life, to appellee, the widow.

On October 6, 1881, appellants filed this suit, alleging that so much of the judgment as decreed the life estate to Mrs. Nolan was an unauthorized "concession," made by their attorney without their knowledge or consent, and by his mistake, they not being present in person at the trial, on account of sore eyes in the family; that the reason they did not sue at once to correct or set aside the judgment was because Mrs. Nolan verbally agreed with them that if they would stop the tax·sale about to be made of the land, put the premises in repair, sell the property and give her $250, she would sign the deed to the land; that meanwhile Mrs. Nolan claimed the use of the two hundred acres and the rents from it. There was no allegation that a sale had been effected and a deed tendered for Mrs. Nolan's signature, nor of tender or offer to tender the $250.

The prayer was to correct the judgment so as to leave standing the part vesting title to the land in plaintiffs, and strike out the part decreeing the life estate to Mrs. Nolan, or in the alternative for specific performance of the alleged verbal agreement.

October 27, 1881, appellee filed general and special exceptions; among the latter that the petition was not sworn to, that it did not seek a new trial, but to revise a judgment of the court itself; that the judgment was obtained by plaintiffs' duly authorized agent and attorney of record, and that the mistake, if there was any, was between plaintiffs and their attorney, and was in no way the fault of defendant; that the alleged verbal agreement by defendant was within the statute of frauds and void, and was without consideration. Defendant also answered denying the allegations of the petition; that the judgment of November, 1880, fully decided the rights of the parties, and the same was *res adjudicata;* that there was no fraud, misrepresentation or mistake on defendant's part about the judgment, but that it was rendered on full and fair understanding between her attorneys and those of plaintiffs; she denied making the alleged verbal agreement, but that if she did, it was in ignorance of her rights, and as it would be a contract for the sale

of lands for a longer term than one year, and not to be performed within the year, and being verbal merely, it was null.

Plaintiffs filed a first amended original petition October 25, 1882, seeking to avoid these general and special exceptions and pleas, but still failed to verify the petition by affidavit.

On the same day the defendant filed an amended plea, claiming the homestead and two hundred acres absolutely, in fee, and praying that, if the judgment already rendered be opened, her rights thereto be heard and determined; but otherwise that she be quieted in her possession and use for life in the homestead and two hundred acres. October 27, 1882, the case was again tried by the court, which in effect refused to open the former judgment, and decreed that the rights of the parties to the land had been fully, fairly and finally adjudicated in that judgment; that they were then *res adjudicata*, and that no other legal cause of action was presented by the petition, and the same was dismissed. Motion for new trial, asking that the cause be reinstated and that plaintiffs be allowed to amend and to swear to their pleadings. No new matter was set up in this motion, nor any errors in the ruling specially pointed out.

*W. L. Davidson*, for appellants.

I. Action always lies to correct a judgment. Revised Code, art. 1354; Roller *v.* Wooldridge, 46 Tex., 368; Coffee *v.* Ball, 49 Tex., 16.

II. The plea of *res adjudicata* was too vague, uncertain and indefinite to enable the court to act thereon. The plea is general, does not point to time and place where and when the matter was adjudicated, but seems to proceed under the idea that the judgment which the suit was brought to correct was a bar to this suit.

. . . IV. The petition in the alternative describes a good cause of action. Boynton *v.* Tidwell, 19 Tex., 118; Trammell *v.* Trammell, 20 Tex., 406; Williams *v.* Wright, 20 Tex., 409; Armendiaz *v.* Serna, 40 Tex., 292; Williams *v.* Randon, 10 Tex., 74; Wells *v.* Fairbank, 5 Tex., 582; Frosh *v.* Swett, 2 Tex., 487; Warner *v.* Bailey, 7 Tex., 517; Wallace *v.* Hunt, 22 Tex., 647; City of Marshall *v.* Bailey, 27 Tex., 686; Robinson *v.* Davenport, 40 Tex., 333.

V. The privilege to amend defective pleadings is a vested right, and cannot be limited. If these pleadings were defective, then the court should have sustained the exception, and granted the plaintiffs the privilege, and given them time to amend. Cook *v.* Crawford, 1 Tex., 9; Burdett *v.* Marshall, 3 Tex., 24; Austin *v.* Jordan, 5 Tex., 130; Lewis *v.* Davidson, 39 Tex., 660; Connell *v.* Chandler, 11 Tex.,

249; Johnson *v.* Marshall, 13 Tex., 400; Walker *v.* Howard, 34 Tex., 478; Teas *v.* McDonald, 13 Tex., 349; Lewis *v.* Alexander, 51 Tex., 578; Rule 13 for District Courts.

VI. If the pleadings state a good cause of action, however defectively stated, it will be held good on general demurrer or exceptions, unless the exceptions indicate a defect in pleading with such certainty as to enable the plaintiffs to obviate the objections by amendment.

. . . VIII. Where injustice has been done a litigant, it is the duty of the court to grant a new trial; and fundamental errors will be revised whether assigned or not. Wetmore *v.* Woodhouse, 10 Tex., 33; Galbraith *v.* Templeton, 20 Tex., 45; Roy *v.* Bremond, 32 Tex., 626; Burns *v.* Wiley, 35 Tex., 20; R. G. R. R. Co. *v.* Scanlon, 44 Tex., 649; Sneed *v.* Mitchell, 24 Tex., 159; Salinas *v.* Wright, 11 Tex., 572; Elliott *v.* Mitchell, 28 Tex., 105; Stein *v.* The State, 27 Tex., 865; Rankert *v.* Clow, 16 Tex., 9; Coburn *v.* Poe, 40 Tex., 419.

*P. E. Pearson,* for appellee.

STAYTON, ASSOCIATE JUSTICE.—This action is brought to correct a judgment rendered in the district court for Fort Bend county, at the November term, 1880, in a suit in which appellants were the plaintiffs, and the appellee and her children were defendants; its object was to vacate so much of that judgment as gave to the appellee a life estate in two hundred acres of land.

The correction sought is not that of a clerical omission or mistake apparent by the record of the case, which may be corrected upon notice to the adverse party by the court, so as to make the record what the court intended it should be, but it is an application to have a part of the judgment which the court did intend to render and have placed in the minutes of the court, as was done, vacated after the term.

The petition must be treated as an application for a re-examination of the case, at a term subsequent to that at which the judgment was rendered, for the purpose of vacating it.

That the district courts have power to re-examine a cause upon its merits, and to vacate its former judgment, where it is made to appear that such judgment was obtained by fraud, accident or mistake, without fault upon the part of the person seeking relief, has often been decided.

It is not alleged that there was any fraud, misrepresentation or wrong upon the part of appellees which induced the rendition of

the judgment, a part only of which is sought to be vacated, and to the vacation of the residue of which the appellants in their petition object.

To authorize a re-examination of the case, it is certainly necessary that all the parties to that suit should be parties to this; yet the children of Mrs. Nolan, who were parties to that suit, are not made parties to this. The legitimate inference from the petition is, that while the appellants in the former suit, as in this, claimed the land in controversy as the separate property of their mother, who was the first wife of W. G. Nolan, the defendants claimed that the land was the community property of W. G. Nolan and his first wife, if not community property of him and his second wife, Mrs. Kate Nolan, who was the mother by him of the other defendants in the former suit.

Although the homestead for life, by the former judgment, was set apart to Mrs. Nolan alone, and although that judgment may have been, as it is alleged, in this regard, made under an unauthorized agreement between the attorney for the appellants and all the defendants in that suit, yet if, through that agreement, the children of Mrs. Nolan surrendered any right which they had or honestly believed that they had, and this for the benefit of their mother, then with reference to the necessity to make the children of Mrs. Nolan parties defendant in this action, it would be unimportant whether the attorney for the appellants had authority to make the agreement upon which the judgment was based or not; for the appellants cannot be heard to ask action upon the judgment based upon that agreement, unless all of the parties to the judgment entered upon it are before the court.

If any part of that judgment should be set aside, the appellants could not be heard to claim its benefits while repudiating a part of it, when most probably the agreement influenced the whole judgment. If the judgment ought to be vacated in any part for want of authority in the attorney of appellants to make the agreement upon which it was based, it would be but just that all the parties should be remitted to their rights as they stood before the agreement was made, and to do this it would be necessary that all parties to the judgment should be before the court; and as they were not, this would have been a sufficient reason for sustaining the demurrer, and especially so, where, as in this case, parties are seeking to hold on to so much of the judgment as is favorable to them, and are seeking to disregard all of it which they deem unfavorable to them.

The appellants are asking equitable relief, and to entitle them to it they should not only have averred a want of authority in their attorney to make the agreement, but they should have set out fully what the agreement was, so that the court could have seen whether or not they had been injured by it, considered with reference to its bearing upon the whole case; for as was said in the case of Roller v. Wooldridge, 46 Tex., 495, " Any mere irregularity in the mode of procuring the judgment is not sufficient. A substantial injury must be shown. Hence it is said by Chief Justice Marshall, that ' although one attorney at law, merely as such, has, strictly speaking, no right to make a compromise, yet a court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the attorney's judgment had been imposed on, or not fairly exercised, and the conduct of the party seeking to be relieved against the compromise of his attorney should have been perfectly blameless.' " Walker v. Parker, 7 Cranch, 436.

It is not every judgment rendered upon unauthorized agreements or compromises of attorneys that a court of equity will set aside; it will only be done where injury has resulted therefrom to the party complaining. Wieland v. White, 109 Mass., 394; Potter v. Parsons, 14 Iowa, 288; Bonney v. Morrill, 57 Me., 374; Jones v. Williamson, 5 Coldwell, 371. In the absence of a clear and full statement of the entire agreement in all its parts and bearings, a court of equity would not undertake to give relief; for in so attempting injustice might be done.

It is not denied that the attorney who made the agreement complained of was the attorney of the appellants in the former suit; and while there are averments in the petition which deny his authority to make it, yet allegations are also found there which bear strong evidence that the attorney was authorized to make the agreement, or at least that such conversation had passed between the attorney and the appellants as authorized him to believe that he was so authorized.

The petition contains the following averments: " Plaintiffs would show that they did propose that if said defendant would pay all the taxes on said land and keep the place in repair, that she might live there and use such land, not to exceed two hundred acres; but these plaintiffs did not propose and never consented to give her any right there, unless she lived there and kept the place in repair and paid the taxes thereon." " That they had told their attorney that it was not their wish to turn the defendant out, but they were willing

that she should stay upon the place and use enough of the land to render her comfortable, if the defendant would pay the taxes on said land and keep it in repair." After this, the petition goes on to deny that they authorized their attorney to embody in the judgment that was entered that which they had practically expressed a willingness to grant. Peru Steel Co. v. Whipple Manuf. Co., 109 Mass., 466.

If there was a failure of the tenant for life to prevent waste of the property, or to pay the taxes thereon, the law, without the judgment so declaring, would impose that duty upon the holder of the life estate, and especially so if the agreement under which the life estate was created so provided.

In this case it is unnecessary for us to enter into an investigation of the controverted question as to how far a compromise made in good faith by an attorney duly employed will be sustained, where the act of the opposite party is fair and untainted with fraud, misrepresentation or mutual mistake, and the transaction itself is reasonable.

Every reasonable presumption is to be indulged in favor of a settlement made by an attorney duly employed, and especially so after a court has recognized such an agreement and entered a solemn judgment on it. There are other matters in the record which might be considered, but in view of those already referred to it is not deemed necessary to do so, for we are of the opinion that, for the reasons indicated, the court did not err in the disposition which was made of the case.

The judgment is affirmed.

AFFIRMED.