REASONER v. GULF, C. & S. F. RY. CO.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 9, 1912. Rehearing Denied Dec. 21, 1912.)

1. PLEADING (§ 48*)—PETITION—ALLEGATION OF DEFENSE—AVOIDANCE.

Where plaintiff's petition sets up facts constituting a defense to the cause of action alleged, it is insufficient unless the effect of such defense is avoided by other allegations.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 105, 106; Dec. Dig. § 48.*]

2. PLEADING (§ 21*)—CONFLICTING ALLEGATIONS—INJURIES TO SERVANT—PETITION.

Where the petition in a fireman's action for injuries alleged for the first cause that plaintiff was wholly and permanently disabled for performing services as a fireman, for the second cause that the defendant wrongfully refused to continue him in its employment, and for the third cause that through defendant's fault he was unable to obtain employment as fireman from other railroad companies, there could be no recovery upon any such allegations; the allegation of permanent disability being in irreconcilable conflict with the necessary implication of the second and third causes that plaintiff again became able to perform the duties of a fireman.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 44; Dec. Dig. § 21.*]

3. RELEASE (§ 17*) — FRAUD — INADEQUATE CONSIDERATION.

Before an injured fireman could be granted a rescission of his release of defendant because procured by fraud, he was required to allege in his petition facts sufficient to show that the amount received by him in consideration of the release was inadequate.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 32; Dec. Dig. § 17.*]

4. RELEASE (§ 52*)—INADEQUACY OF CONSIDERATION—PLEADING.

Where the petition in an action by a servant for injuries alleged that after the injury plaintiff and defendant entered into a contract by which plaintiff released the claim for injuries in consideration of the payment of a stated sum of money, and a reinstatement in defendant's employment, and a breach of such contract, and the petition was insufficient to support a recovery for permanent injuries, a failure to allege that the damage arising from the temporary disability following the injury was in excess of the amount received under such contract of release rendered it insufficient to present any ground for rescinding the release.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 92; Dec. Dig. § 52.*]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Action by W. H. Reasoner against the Gulf, Colorado & Santa Fé Railway Company. From judgment for defendant dismissing the action, plaintiff appeals. Affirmed.

Odell & Johnson and S. C. Padelford, all of Cleburne, for appellant. Brown & Lomax, of Cleburne, and C. K. Lee, of Ft. Worth, for appellee.

DUNKLIN, J. W. H. Reasoner instituted this suit against the Gulf, Colorado & Santa Fé Railway Company, and, from a judgment sustaining a general demurrer and certain special exceptions to his fourth amended original petition and dismissing the suit, plaintiff has appealed.

The petition is very voluminous, covering 35 pages in the transcript, alleging three separate and distinct causes of action, and abounding in redundancies and unnecessary repetitions, and no useful purpose will be served by incumbering this opinion with a full copy of it. According to allegations in the petition, the following facts were relied on as constituting the first cause of action: Plaintiff was employed by defendant to perform the services of a switch fireman in defendant's railway yards situated in the town of Cleburne. On March 16, 1909, in the performance of his employment, he undertook to fill the water tank of a switch engine with water from a crane erected near defendant's track, and while so engaged the spout through which the water was conducted from the crane into the tank of the engine suddenly flew up and around knocking him from the engine to the ground and injuring him. The water was forced, under high pressure, from a water main in the ground into the crane by means of compressed air, which was a dangerous agency to be used for that purpose. The water spout was connected with the crane by means of a nozzle which was defectively constructed and in a defective condition, the defects in which were unknown to plaintiff; and on the occasion of the accident the spout was caused to fly up and around and to strike and injure plaintiff by reason of the defects in the nozzle and the high pressure applied to the water while passing through the nozzle into the spout. The method thus employed to supply the engine with water was a dangerous method, the dangers of which were unknown to plaintiff, and defendant was guilty of negligence in so furnishing same to be used by plaintiff and in failing to warn him of such dangers.

Following allegations of the facts noted above, that portion of the petition devoted to a statement of the first cause of action concludes as follows: "Plaintiff would further ayer that because of his fall from said water tank, having been knocked off, as stated above, his head struck upon the rocks, or upon the timbers, and that his back, hips, and especially the small of his back, and his hips, and his left leg, and foot struck upon the rocks, which were lying upon the ground upon which he fell, and his whole body came with great force upon the ground upon which were lying and situated these rocks and timbers, and that a deep gash and cut was made on the back of his head, cutting through the scalp to the skull bone, and that his brain was concussed, jarred, and injured; that his shoulders were wrenched, bruised, and mashed; that his back and spinal column were concussed and bruised, and the small of his back wrenched and mashed, and his leg bruised and mashed, and his foot injured, so that he was knocked senseless, and his whole body injured, especially his head, brain, neck, and spinal column, hips, left leg, and foot—that is, plaintiff avers that by reason of the great shock and fall caused by his being knocked from the engine tank upon the ground, upon which were situated said rocks, and other hard substances, there was a great gash cut in the back of his head through the scalp to the bone, his brain was concussed and injured, his back and spinal column and neck were concussed and injured, his shoulders were injured, his left hip, leg, and foot were injured as stated above by reason of the said force and violence with which he was thrown upon said ground, and upon said hard substances, and that on account of said injuries so negligently inflicted upon him by the negligence of the defendant, as shown above, he was confined to his bed and room for at least six weeks, during which time he was caused to have, and did have, and was thrown into, a large number of convulsions, and suffered intense and agonizing physical and mental anguish; that his head, brain, spinal column, shoulders, back, hips, left leg, and foot were permanently injured and affected by said injuries produced by said fall resulting from the said negligence of the defendant, as shown above, and that he has been unable since, and is now unable, and will for some time be unable, to earn the amount of money which he was earning at the time of his injuries, and that by reason of the injuries so negligently inflicted upon him by the defendant, as stated above, he is permanently injured, and that his earning capacity has been since his injuries, and will in the future, be permanently depreciated in the amount of at least $50 per month, in which amount the plaintiff has been damaged by the negligence of the defendant, and that he will continue to suffer during his life physical pain and mental anguish, and that his earning capacity has been, and will be, depreciated, as stated above, during his natural life; that prior to his injuries he was healthy and strong physically and capable of performing a great deal of physical labor and work; that he never had been injured in any way; that he never prepared himself to follow any calling or profession other than such as required physical labor and exertion, and that at the time of his injuries he was sound mentally and physically, and that he had a

life of ——— years, being at said time 28 years of age, and that by reason of the negligence of the defendant, as stated above, the said water spout was caused to strike him between the shoulders and to knock him off of and to cause him to fall upon the ground, and the other hard substances, as stated above, and that because of all the negligent acts of the defendant, as stated above, he was wrongfully injured and his earning capacity depreciated, and he was caused to suffer both physical and mental pain, and will be injured in the future, having been permanently injured, as stated above; and that, by reason of all the facts and things mentioned and alleged above, the plaintiff has been damaged by the negligence of the defendant in the sum of $7,500, for which amount plaintiff sues as damages resulting to him proximately from the negligence of the defendant as shown above."

The second cause of action is for damages for alleged wrongful discharge of plaintiff from defendant's service as a switch fireman, and, in stating that cause of action, the following facts are alleged: Prior to the date defendant employed plaintiff it entered into a contract in writing with the Order of Locomotive Firemen and Enginemen, one of the stipulations in which contract reads: "Art. 36. No fireman shall be discharged, or held off of duty, upon any charge whatsoever, without first having a fair and impartial trial and his guilt established, with the exception of aggravated cases." That contract was in force and effect at the time plaintiff was employed by defendant, and was expressly made a part of the contract of employment.

The following established and well-known customs and usages of defendant also became parts of its contract of employment of plaintiff: First. To give to each fireman voluntarily leaving or having been discharged from its service a service letter or certificate in writing containing, among others, a statement whether or not any settlement theretofore made for injuries to such fireman during his employment was satisfactory to the defendant. Second. To furnish to every fireman remaining in defendant's employment but suffering from a temporary disability to labor from any cause with free transportation for himself and family over defendant's line of railway, if such employé should make application therefor. At the time of plaintiff's employment there was another well-known usage and custom among all railway companies, including defendant, which was within the contemplation of plaintiff and defendant at the time of his employment as fireman, and which therefore became a part of said contract, namely, to deny employment to any applicant therefor holding a service letter or certificate issued by another railway company containing the statement that it had settled with the person to whom the letter was given his claim

for damages for personal injuries sustained while in the employment of that company, and that such settlement was unsatisfactory to the company issuing the certificate.

Following his injury which occurred March 16, 1909, plaintiff was treated by Dr. M. Dennis, the surgeon employed by defendant. After treating plaintiff Dr. Dennis stated to him that plaintiff was not seriously injured "and that he would get all right, and that in about two months from the latter part of May, 1909, he could go back to work and would be able to go on with his employment as such fireman with the defendant." On divers occasions prior to June 17, 1909, John Douglass, who was defendant's claim agent, and authorized by it to settle with plaintiff for the injuries he had sustained, called upon plaintiff for the purpose of settling the same and offered to plaintiff the sum of $600 in full settlement therefor. Following those allegations the petition continues: "Plaintiff would further aver that on the 17th day of June, 1909, the defendant by and through its said claim agent falsely and fraudulently represented to the plaintiff that if the plaintiff would settle with the defendant for his injuries mentioned above for the insignificant sum and amount of $700 and that such settlement would be and was entirely satisfactory with the defendant, and that the plaintiff would not be suspended or discharged from the service of the defendant, but that he would be admitted into the service of the defendant as soon as he was able to perform the services of switch fireman, which the said claim agent represented would be in a short time; that the said representations were false and fraudulent at the time that they were made by the said claim agent to the plaintiff, and were made for the purpose and upon the consideration of fraudulently inducing and procuring the plaintiff to settle with the defendant for a small and insignificant sum of $700; and that on said last-mentioned day and date, upon the faith of the truthfulness of the statements theretofore made by the said M. Dennis, mentioned above, and upon the faith of the truthfulness of said claim agent then and theretofore made, as stated above, that the plaintiff would soon be able to go back to work as such switch fireman, and that he was not seriously injured, and that the said settlement was and would be entirely satisfactory to the defendant, the plaintiff on the faith alone of such statements and representations agreed to a settlement for his injuries for the inadequate sum of $700, and that the said settlement for the said insignificant sum of $700 mentioned above was fraudulently induced to be made on the part of the plaintiff with the defendant by the fraudulent representation and statements of the said physician and surgeon, and that the said claim agent of the defendant in falsely and fraudulent stating and representing to the plaintiff that he was not seriously injured,

and would be able shortly to return to work, and that the plaintiff was still in the service of the defendant, and would have all of the rights and privileges of any employé of the defendant in the position of switch fireman, and would continue to receive his wages, which, as stated above, amount to $75 per month, and that the said settlement was entirely satisfactory with the defendant company."

The contract of settlement so made by plaintiff with defendant reads:

"Gulf, Colorado & Santa Fé Railway Company. To ―――― W. H. Reasoner ――――, Dr., Cleburne, Texas: For and in full release, discharge and satisfaction of all claims, demands or causes of action, arising from or growing out of any and all injuries sustained by me of every character and description whether now apparent or which may hereafter develop, while in the performance of my duties as fireman at or near Cleburne, or on or about the 16th day of March, 1909, as well as any and all claims of whatsoever kind or character I may have against the said railway company prior hereto and up to and including the date thereof. In consideration of this settlement no promise or representation is or has been made relative to future employment. Settled in full for $700. Paid by draft No. 11626.

"Received of Gulf, Colorado & Santa Fé Railway Company, seven hundred and no/100 dollars in full payment of the above claim. In consideration of the payment of said sum of money, I, W. H. Reasoner, of Cleburne, in the county of Johnson, state of Texas, hereby remise, release and forever discharge said company of and from all manner of actions, causes of actions, suits, debts, and sums of money, dues, claims and demands whatsoever, in law or equity, which I have ever had or now have against said company, by reason of any matter, cause or thing whatever, whether the same arose upon contract or upon tort. I have read the above voucher receipt and release and I fully understand the same. In testimony whereof I have hereunto set my hand, this 17th day of June, 1909. [Signed] W. H. Reasoner."

The said representations and statements so made by Dennis and Douglass were false and were made as the result of a fraudulent conspiracy between the makers to obtain said contract of settlement, and the amount so received by plaintiff in consideration for said settlement was wholly inadequate to compensate him for the injuries he had sustained. The misrepresentations so made by Dennis and Douglass were within the scope of the duties of their employment by defendant, and defendant has ratified the same by pleading said contract of settlement in bar of this suit. Wherefore the settlement is of no binding force or effect. Upon plaintiff's request therefor Dr. Dennis on August 1, 1909, executed and delivered to him a cer-

tificate of discharge from medical treatment, reading: "The bearer, Willard H. Reasoner, came under my care at home on March 16, 1909, for injuries and has been discharged from further treatment and may report for duty. [Signed] M. Dennis, Surgeon. Has not been under my care for over two months. M. D."

After receiving this certificate from Dennis, plaintiff made application to defendant for permission to resume his former service as switch fireman, but his application was refused, and he was notified by defendant that he was discharged from its service. Thereupon plaintiff applied to defendant for a service-certificate and received a certificate containing the statement that plaintiff had been discharged "because it was reported that settlement made account of personal injury was apparently unsatisfactory." Dissatisfied with that certificate, plaintiff demanded of defendant a service certificate "in accordance with the law of the state." Responding to that demand, defendant issued and delivered to him a second service certificate containing the statement that plaintiff had been "discharged because it was reported by the general claim agent of the company that settlement made account of personal injury was apparently unsatisfactory," meaning thereby that the settlement was unsatisfactory to defendant. Plaintiff further alleged that prior to his discharge plaintiff's request for free transportation over its railway from Cleburne, Tex., to Ft. Worth, Tex., was refused upon the ground that he had been discharged, but the petition contains no allegation of the sum of money necessary to procure tickets for that trip, nor any specific claim for such a sum to be allowed him as damages. Next follow allegations, in effect, that there was no cause whatever for plaintiff's discharge from defendant's service as a fireman; that his discharge was without the hearing stipulated in defendant's agreement with the Order of Locomotive Firemen above set out, and was a breach of defendant's contract with plaintiff to give him permanent employment as a switch fireman.

The statement of the second cause of action then concludes as follows: "Plaintiff would further aver that in accordance with his contract he was entitled to about the sum of $75 per month, and that if he had not been injured as stated above, by the wrongful and negligent acts of the defendant, that his services were reasonably worth the sum and amount of more than $75 per month, but that the injuries so inflicted upon him have permanently depreciated his earning capacity in the sum of $50 per month; that the defendant by wrongfully and illegally discharging the plaintiff, and breaching said contract, has damaged the plaintiff in the amount of $7,500, for which amount plaintiff sues."

For the third cause of action it was al-

leged that, by reason of the statement in the service certificate that said settlement with plaintiff was unsatisfactory, plaintiff has been, and will in the future be, unable to secure employment as a fireman from any railway company; that "plaintiff has prepared himself to labor in the railway service; that he had qualified himself to labor in said service; and that he has not qualified himself to labor in any other service to the extent he has in said railway service." The pleading then concludes the third cause of action as follows: "The issuance of said certificate was in violation of the contract which the plaintiff had with the defendant, as shown above, and was contrary to the law of this state, and that the defendant by the wrongful issuance and delivery to the plaintiff of said certificate contrary to said contract, and against the laws of this state, has damaged the plaintiff in the sum of $7,500." The petition further contained a statement that plaintiff tenders the $700 paid to him by defendant to be allowed as a credit on any sum which might be found due him prior to said settlement. The entire petition concludes with a prayer for each and all of the three items of $7,500 claimed as damages in the three causes of action alleged, and with a further prayer for general relief.

The contract of settlement entered into by plaintiff is referred to in his petition as a settlement in full for his injuries. Plaintiff did not plead the contract in hæc verba, but alleged that it had been pleaded in defendant's answer. Defendant's fourth amended answer filed subsequently to the filing of plaintiff's fourth amended petition purports to set out the contract in full, and that is the only answer appearing in the transcript. But in several instances appellant states in his brief that the contract shown in defendant's fourth amended original answer appearing in the transcript is the contract of settlement which appellant executed and delivered to appellee. Sayles' Ann. Civ. St. 1897, art. 1191, reads: "The petition shall set forth clearly the names of the parties and their residences, if known, with a full and clear statement of the cause of action, and with such other allegations, pertinent to the cause, as the plaintiff may deem necessary to sustain his suit, and without any distinction between suits at law and in equity, and shall also state the nature of the relief which he requests of the court." The petition is not in the form of different counts presenting different combinations of facts alleged in the alternative and constituting the same cause of action, but it presents three separate and distinct causes of action; the facts constituting each cause being alleged as unqualifiedly true.

In the case of Rowe v. Horton, reported in 65 Tex. 89, the plaintiff Rowe sued defendant Horton to reform a deed executed by Rowe to Horton to effect a partition between the parties of a larger tract of land; a mistake in the field notes copied in the deed being the basis for the relief sought. In disposing of the appeal in that case our Supreme Court, after referring to the allegations in the petition, said: "A general demurrer to this petition was sustained because of the inconsistency in its averments in first alleging that by agreement the very land contained in the field notes was to be conveyed to Horton, and subsequently denying that such was the agreement and seeking to set it aside. A special demurrer setting up the statute of limitations and that plaintiff's demand was stale was also sustained. * * * It is clear that the ruling upon the petition was correct. The plaintiff had alleged that the deed from Horton to herself, with the field notes as contained in it, was in accordance with the agreement between them as to a partition of the land. As there was no mistake in making the agreement, there was nothing in the deed to correct, and the court could not correct it without violating the contract of the parties as to the partition. The subsequent allegations upon this subject were contradictory of those above stated, and, taken in connection with them, showed a state of case so inconsistent with itself as to warrant the court in refusing the relief." See, also, Buchanan v. Bilger, 64 Tex. 592, 593.

[1] It is also a familiar rule that, if facts constituting a defense to the cause of action alleged are set up in plaintiff's petition, the petition will be held insufficient unless the effect of the defense thus shown is avoided by other allegations. Knopf v. Morel, 111 Ind. 570, 13 N. E. 51; 31 Cyc. 110.

[2] The recovery sought by the second cause of action pleaded was for damages for breach of defendant's contract to continue plaintiff in its employment as fireman from and after his application for such employment made on or about August 1, 1909. The purpose of the third cause of action stated was to recover damages resulting from his inability to obtain employment as a fireman from railway companies other than defendant. That plaintiff has been able to perform the services of a fireman ever since his discharge by defendant is necessarily implied by the pleadings stating both the second and third causes of action. That allegation is in conflict with and repugnant to the allegation contained substantially in the statement of the first cause of action that by reason of his injuries plaintiff was wholly and permanently disabled from performing such services. By reason of such repugnancy the second and third causes of action must be held insufficient, and for the same reason damages for disability to labor as a fireman from and after plaintiff applied to defendant for such service on or about August 1, 1909, are not recoverable as a part of the first cause of action. We have then

a settlement purporting to be in full of all demands. By reason of conflicting allegations, all damages claimed for permanent injuries, for breach of the contract for permanent employment, and for the objectionable statement contained in the service letter must be eliminated.

[3, 4] The only remaining items for which damages are claimed are physical and mental suffering and loss of earnings from the date of the accident to the date he applied for reinstatement in defendant's service, which was on or about August 1, 1909. Plaintiff seeks to set aside his contract of settlement on the ground of fraud. The burden is upon him to do this before he can recover any sum, and he must distinctly allege the necessary grounds therefor. 8 Cyc. 523. And every reasonable presumption will be indulged in favor of the contract of settlement. Williams v. Nolan, 58 Tex. 708. One fact necessary to be shown before plaintiff can be granted a rescission of the contract of settlement is that $700, the amount received by him, was inadequate to compensate him for the temporary loss of earnings alleged to be $75 per month from March 16th to August 1st, aggregating less than one-half the sum received, and for the suffering referred to above. The petition contains no allegation of the amount of damages claimed for physical and mental suffering, nor that the amount he received over and above his wages during his temporary disability was insufficient to compensate him for such suffering. In pleading the first cause of action plaintiff claims $7,500 for those items and for permanent disability, and, according to allegations in pleading the second and third causes of action, damages sustained by reason of permanent disability alone amounted to $7,500, thus impliedly refuting the idea that damages sustained for temporary disability and physical and mental suffering exceeded the sum of $700 already received by him. Furthermore, if plaintiff was not seriously injured, as substantially alleged in pleading the second and third causes of action, then it would seem reasonable to suppose that his suffering in consequence of his injuries was not so great that the amount received by him did not compensate him therefor.

After a due consideration of the petition in all its voluminous details, we are unable to conclude that there was error in sustaining the general demurrer, and accordingly the judgment is affirmed.