FIDELITY LUMBER CO. et al. v. EWING
et al. (No. 284.)

(Court of Civil Appeals of Texas. Beaumont.
Jan. 2, 1918. Rehearing Denied
March 20, 1918.)

1. JUDGMENT ⬅═453—ACTION TO SET ASIDE—
"PRIVITY."

In an action of trespass to try title to 320 acres of land, warrantors, who were vouched in, believing plaintiffs' representations that they were the sole heirs of the land in controversy, paid them $5,000 therefor, upon which the court entered its compromise judgment vesting title in the warranted owners and releasing the warrantors from further liability on their warranty. Later suit was instituted by other heirs, and it appeared that plaintiffs in the former suit had title to but 132 of the 320 acres. The warranted owners, defendants in the former suit, sued to set the compromise judgment aside as having been procured by fraud and through mistake. Held, plaintiffs in the instant suit were in privity with defendants' therein, plaintiffs in the former action, "privity" being defined as "a connection or bond of union between parties as to some particular transaction; mutual or successive relationship to the same right of property."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Privity.]

**2. JUDGMENT** ☞461(5) — ACTION TO SET ASIDE—EVIDENCE.

In action to set aside a compromise judgment for fraud and mistake, evidence *held* to show fraud and mistake.

**3. COVENANTS** ☞130(4) — BREACH OF WARRANTY—DAMAGES.

The measure of damages in a suit upon general warranty of title to land is the purchase money, with interest at the legal rate from date of payment.

**4. COVENANTS** ☞130(7) — BREACH OF WARRANTY—DAMAGES.

Where title to only a part of land sold under general warranty of title fails, the vendor is liable upon his warranty for damages bearing the same proportion to the whole purchase money as the value of the part as to which title fails bears to the whole premises, estimated at the prices paid.

**5. COVENANTS** ☞130(7) — BREACH OF WARRANTY—DAMAGES.

In an action of trespass to try title to 320 acres of land, warrantors, who were vouched in, believing plaintiffs' representations that they were the sole heirs of the land in controversy, paid them $5,000 therefor, upon which the court entered its compromise judgment vesting title in the warranted owners and releasing the warrantors from further liability on their warranty. Later suit was instituted by other heirs, and it appeared that plaintiffs in the former suit had title to but 132 of the 320 acres. The warranted owners, defendants in the former suit, sued to set the compromise judgment aside as having been procured by fraud and through mistake. As to the warrantors, the court granted warrantees the relief only of canceling the release, in the former judgment, of warrantor's liability in excess of $5,000. *Held* error, for, having by payment of the $5,000 obtained title to but 132 of the 320 acres for the warrantees, warrantors were entitled to release of only $^{132}/_{320}$ of their warranty liability for the purchase money with interest, and not to the extent of $5,000 thereof absolutely.

**6. JUDGMENT** ☞461(3) — ACTION TO SET ASIDE—EVIDENCE.

In action to set aside compromise judgment releasing plaintiff's warrantors from liability, evidence *held* to show the amount of purchase price paid the warrantors.

**7. JUDGMENT** ☞461(3) — ACTION TO SET ASIDE—EVIDENCE.

In action to set aside compromise judgment as having been procured by fraudulent representations of plaintiffs in such former suit as to their title, inducing purchase by defendants therein, evidence *held* to show that such defendants did not purchase a "chance of title."

Appeal from District Court, Tyler County; W. R. Blackshear, Judge.

Action by the Fidelity Lumber Company and others against Presley K. Ewing and others. From judgment for defendants, plaintiffs appeal. Reversed and rendered in part, and in part remanded.

Baker, Botts, Parker & Garwood, of Houston, for appellants. Matthews & Browning, of Lampasas, Minor & Minor, of Beaumont, and Presley K. Ewing, of Houston, for appellees.

BROOKE, J. At the July term, 1912, of the district court of Tyler county, in a certain cause pending in said court, and numbered on its docket 3197, Presley K. Ewing,

Mrs. Alice A. Mahon and her husband, S. A. Mahon, H. L. McCorkle, Ashley W. Cullum, Jr., Thos. Marvin Cullum, Jr., and Alice Louise Cullum, minors, by their next friend, A. W. Cullum, and A. M. Cullum in his own right, John T. Baldridge, Mrs. Miranda Grantham, a feme sole, Mrs. Jennie Ercanbrack, W. W. Ercanbrack, Mrs. D. P. Foster, a feme sole, Mrs. Rachael Barrett, R. B. Barrett, and W. W. Baldridge, brought an action of trespass to try title against Thompson Bros. Lumber Company, a private corporation, to recover an undivided one-half interest in a tract of 640 acres of land, situated in said Tyler county, Tex., patented to Marinda Hyde by the state of Texas, on May 5, 1887, and described in the land office of the state of Texas by patent No. 165, volume 46, abstract No. 825, which land was described by metes and bounds in the petition. Afterwards plaintiffs amended their petition suggesting the death of S. A. Mahon, one of the plaintiffs, and making the Fidelity Lumber Company, a private corporation, a party defendant. They prayed for judgment establishing their title to the half interest sued for, and for partition.

Thompson Bros. Lumber Company answered by a general denial and plea of not guilty, and vouched in S. F. Carter and J. P. Carter as warrantors, alleging in substance that the Emporia Lumber Company, a corporation, by its written deed, had conveyed the tract of land in controversy, and other lands, to J. L. Thompson, Hoxie H. Thompson, and Alexander Thompson, the grantors of Thompson Bros. Lumber Company, with general warranty of title, and that S. F. and J. P. Carter, being the owners of the entire capital stock of the Emporia Lumber Company, did, after the dissolution of said company, bind themselves in writing to perform the obligations of warranty contained in the deed from said company to the three Thompsons above named, as said land was purchased and paid for on the basis of $3 per thousand feet of standing timber thereon, and that there was a growth of such timber thereon aggregating 4,000,000 feet, for which the defendants, grantors, paid the Carters $12,000; that thereafter the said Thompsons conveyed by deed the land in controversy and the timber thereon to defendant Thompson Bros. Lumber Company; and that the covenant of warranty in the deed from the Emporia Lumber Company and the warranty and guaranty of title of S. F. and J. P. Carter was transferred to and inured to the benefit of the defendant Thompson Bros. Lumber Company.

Defendants S. F. and J. P. Carter answered by general denial and plea of not guilty, and vouched in the American Exchange National Bank of Dallas, Royal A. Ferris, and A. V. Lane, as warrantors of the title of

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

their vendee, the Emporia Lumber Company, to said 640 acres, alleging in substance that the said bank, acting through said Ferris as president, and the said Lane as cashier, had deeded said land to the Emporia Lumber Company, and had received as the purchase price thereof the sum of $2,720, and asked that, in the event the plaintiffs should recover the half interest sued for, they have judgment over against the American Exchange National Bank on its covenant of warranty for $1,360, being one-half of the amount received by said bank for said 640-acre tract. They also vouched in Edwin B. Parker, alleging in substance that the Thompson Bros. Lumber Company, in January, 1907, had executed to said Parker a deed of trust wherein it conveyed to him a large number of tracts of land, including the tract sued for, which was made to secure the payment of bonds issued by said lumber company in the sum of $500,000, of which a large amount remained unpaid, and at the same time transferred and assigned said contract of warranty or guaranty of the Carters, described in the answer of Thompson Bros. Lumber Company, to said Parker for the benefit of the holders of said bonds, and for this reason the Thompson Bros. Lumber Company was not entitled to recover against them on said contract of warranty or guaranty, but that, should the court hold otherwise, then they prayed for such judgment as would prevent them from being held liable to both Thompson Bros. Lumber Company and the said Edwin B. Parker, trustee.

Defendant Fidelity Lumber Company answered by general denial and plea of not guilty.

Under the pleadings above outlined, judgment was entered reciting, in effect:

That it appearing to the court that, since the answer of the defendants S. F. and J. P. Carter was filed, they, the said Carters, had entered into a compromise of the suit with plaintiffs, and had purchased the land in controversy from them, and had paid them therefor the sum of $5,000, and that by a supplemental petition they had pleaded their rights under said purchase and compromise; and that it further appearing that said S. F. and J. P. Carter are the remote warrantors of defendant Fidelity Lumber Company, "who holds such title as it may have heretofore held through a chain of title in which is a deed from the said S. F. Carter and J. P. Carter to those through whom it claims, which contained a covenant of general warranty of title, and that said compromise and purchase inures to the benefit of said Fidelity Lumber Company, which, by reason of said fact, is entitled to judgment for said land: It is therefore by the court, considered, ordered, and adjudged that the plaintiffs take nothing by their suit, and that all of the defendants go hence without day, and that the Fidelity Lumber Company do have and recover of and from the plaintiffs herein (naming all of them), and that the defendants S. F. and J. P. Carter and the Thompson Bros. Lumber Company be divested of the title and possession of the land described in plaintiffs' amended petition, which is an undivided half of the tract or survey of land described as follows: 'All that certain 640-acre survey of land situated in Tyler county, Texas,

patented to the heirs of Marinda Hyde May 5, 1887, by the state of Texas, and described by patent No. 165, volume 46, abstract No. 825, and recorded in the land office of the state of Texas; said 640 acres are described by field notes in said patent, to wit.'" (Here follows description by metes and bounds.)

The court, in said judgment, further decreed that, the Carters having protected the title of their vendees, they be released from any further liability to Thompson Bros. Lumber Company and E. B. Parker on account of the covenants of warranty contained in the deed from Emporia Lumber Company to the Thompsons, by which they became bound by the covenants of warranty contained in said deed from the Emporia Lumber Company to said Thompsons which were pleaded in the answer of said Carters. It is further decreed as between the Carters and the American Exchange National Bank that, the Carters having paid said sum of money to acquire plaintiffs' title, they have judgment against said bank for the sum of $1,413.90, which sum having been paid in open court the bank was adjudged to be released from any further liability to any of the defendants on the covenants of warranty contained in the deed from said bank to the Tyler County Land & Lumber Company.

June 26, 1914, the Fidelity Lumber Company, a corporation, J. L. Thompson, Hoxie H. Thompson, Alexander Thompson, Thompson Bros. Lumber Company, a corporation, and Edwin B. Parker, trustee, brought this suit against Presley K. Ewing, Mrs. Alice A. Mahon, a feme sole, H. L. McCorkle, Ashley W. Cullum, Jr., Thos. Marvin Cullum, Jr., Annie Louise Cullum, A. W. Cullum, Mrs. Miranda Grantham, a feme sole, Mrs. E. P. Foster, a feme sole, Mrs. Jennie Ercanbrack, W. W. Ercanbrack, Mrs. Rachael Barrett, R. B. Barrett, and John T. Baldridge, all of whom were plaintiffs in cause No. 3197, S. F. Carter, J. P. Carter, American Exchange National Bank of Dallas, S. M. Johnson, W. A. Johnson, Minnie L. Massie and her husband, James S. Massie, and Charles Baldridge, said cause being numbered on the docket of said court 3305; and thereafter, on the 7th day of January, 1916, amended their petition wherein they sought to have the judgment above referred to set aside and annulled upon the ground of fraud upon the part of all the plaintiffs in cause 3197, except the plaintiff Presley K. Ewing, whereby the defendants therein were induced to enter into the agreed judgment under the belief that the plaintiffs, except the plaintiff Presley K. Ewing, who had purchased the interest of certain of the plaintiffs, were all the heirs of Marinda K. Hyde, the original grantor; and on the further ground of mutual mistake between all the plaintiffs and defendants that said plaintiffs, including those whose interests were owned by said Ewing, were all of such heirs; and after setting up the institution of the former suit No. 3197, in July, 1912, above referred to, and the

pleadings of the parties, and after setting out in full the judgment hereinabove referred to, further alleged:

That said judgment was never submitted for approval to the Fidelity Lumber Company, Thompson Bros. Lumber Company, and to the Thompsons, or either of them, or to the attorneys representing them in said cause, and that they did not authorize the entry of said judgment, and did not learn of the terms and provisions thereof until after the institution of a certain suit styled Sanford R. Houghston et al. against Fidelity Lumber Company et al. in the District Court of the United States for the Southern District of Texas, at Beaumont, and that, as soon as they learned of the entry of said judgment and the terms thereof, they promptly repudiated the same as being wholly unauthorized by them or either of them, but that, if mistaken in this, then the judgment above referred to was acquiesced in by plaintiffs under the understanding that the plaintiffs in cause No. 3197 constituted all of the surviving heirs of Marinda Hyde, and were the only persons having any right or title to the undivided half of said 640-acre survey sued for therein, and upon such understanding that the $5,000 was paid to plaintiffs as stipulated in the decree. That such facts were made to appear in said cause by the depositions of certain of the plaintiffs in the said suit, and by certain affidavits of plaintiffs furnished to Judge J. C. Matthews, attorney for S. F. and J. P. Carter, upon the truth of which the defendants therein (and the plaintiff Presley K. Ewing) relied in agreeing to said settlement. That the only issue in said cause No. 3197 was a question of heirship under said Marinda Hyde, it being uncontroverted that, if the plaintiffs therein were all of the heirs of said Marinda Hyde, they were entitled to recover an undivided one-half interest of the land sued for.

Plaintiffs further alleged that on the 29th of October, 1913, Sanford R. Houghston and others instituted a suit in the United States District Court for the Eastern District of Texas, at Beaumont, against the plaintiffs herein to recover the Marinda Hyde survey as heirs of said Marinda Hyde, said cause being numbered D. L. 461, in which a judgment was entered by the court on April 8, 1914, decreeing that the plaintiffs in said suit and said judgment were not parties to the suit of Presley K. Ewing et al., No. 3197, and awarding them ——— acres of land in said Marinda Hyde survey, and that plaintiffs herein had no intimation until the filing of said suit in the United States District Court that the plaintiffs in cause No. 3197 were not the sole and only heirs of Marinda Hyde as represented at the time said judgment was entered; that thereupon plaintiffs began an investigation, and ascertained that the parties who were plaintiffs in cause No. 3197 are not, and were not at the time of

the entry of said judgment, the only heirs of said Marinda Hyde.

Plaintiffs further allege that the decree in cause No. 3197 should be annulled because entered as a result of the mutual mistake on the part of all of the defendants to said cause, and of all the plaintiffs, and especially the plaintiff Presley K. Ewing; that the parties plaintiff to said cause were the only surviving heirs of Marinda Hyde, and as such were entitled to recover all the land sued for in said case, and that all of the defendants and plaintiffs, and especially the plaintiff Presley K. Ewing, in good faith, based upon depositions taken in the case, the ex parte affidavits of plaintiffs, and representations made to them by the plaintiffs and their attorneys, that plaintiffs therein were all of the heirs of Marinda Hyde, and so believing, agreed to and acquiesced in the entry of said judgment.

Plaintiffs further alleged that, if mistaken in the foregoing allegations, then that the judgment in cause No. 3197 should be annulled for the reason that plaintiffs in said cause (other than Presley K. Ewing) and their attorneys well knew at the time said depositions were taken in said cause, at the time the affidavits were made as to the heirs of Marinda Hyde, and at the time of the entry of said decree, that the plaintiffs named in said suit were not the only surviving heirs or vendees of said heirs of Marinda Hyde, and notwithstanding their knowledge of such fact they willfully, knowingly, and falsely, and by means of said depositions and affidavits and statements made by their attorney, the defendant S. M. Johnson, represented to said defendants in said case and their attorney that plaintiffs in said case were the only heirs or vendees of heirs of Marinda Hyde, and were the only persons entitled to any right, title, or interest in the land in controversy, and that said representations were made to induce the entry of the decree in said cause and so resulting in the defendants and their counsel being deceived and misled thereby.

Plaintiffs further alleged that they were informed and believed, and so charged, that the defendant H. L. McCorkle, the defendant Mrs. D. P. Foster, and the daughter of the said Mrs. D. P. Foster, whose name is to the plaintiffs unknown, informed the said S. M. Johnson, one of the defendants herein, and who was one of the attorneys for plaintiffs in cause No. 3197 at the time that the depositions of one or all of them were taken and prior to the entry of the decree in said cause, that the parties named as plaintiffs in cause No. 3197 were not the only heirs of Marinda Hyde or of the vendees of said heirs; that they informed said Johnson that the children of said Mrs. D. P. Foster's sisters, to wit, Colliers, were also heirs of said Marinda Hyde, and ought to be included in the list of plaintiffs who were advised by said Johnson that the Col-

liers had nothing to do with said cause; that there were in fact six of the Collier children, who all resided within a short distance of Mrs. D. P. Foster; that the said H. L. McCorkle informed said Johnson that his mother had several sisters living in Mississippi, and that he was sure they all had children, and they all ought to be made parties plaintiff to said suit; that said Johnson informed the said McCorkle that he had advertised for said heirs, but that he could not locate them, and that they were not necessary parties to the suit.

Plaintiffs further alleged that, notwithstanding the fact that the said S. M. Johnson had such information from the sources referred to, he nevertheless knowingly withheld such information from the defendants and the court at the time of the entry of said judgment, and willfully represented to the defendants and their attorneys, and to the plaintiff Presley K. Ewing, that the parties named as plaintiffs in said case were the only heirs of Marinda Hyde or the vendees of said heirs, and that defendants were thereby deceived and misled, and induced to agree or acquiesce in the decree entered in said cause.

Plaintiffs further alleged that, by reason of said mutual mistake or the false and fraudulent representations and willful suppression of the facts by the plaintiffs (except Presley K. Ewing), the decree was entered in said cause No. 3197 divesting the title to said 320 acres out of the plaintiffs and vesting it in the defendant Fidelity Lumber Company, the defendants in good faith believing that plaintiffs in said cause were all of the true heirs of said Marinda Hyde or the vendees of such Hyde, and had title to said land, but that it now develops that plaintiffs in said cause No. 3197 in truth and in fact had title to only 140 acres of said land, the title to approximately 180 acres thereon being outstanding in other heirs of Marinda Hyde, and that by reason of said mutual mistake or said false and fraudulent representations the defendants Carters and the American National Exchange Bank of Dallas agreed to said judgment and did pay to plaintiffs in said cause the sum of $5,000 as stipulated and recited in said decree, and said sum would not have been paid except upon their reliance on the truth of said representations of plaintiffs and their attorneys; and further that, by reason of said mutual mistake or said false and fraudulent representations, it was stipulated in said judgment that upon the payment of said sum of $5,000 the said Carters and the American Exchange National Bank should be released from all further liability upon their covenants of warranty to said land, and that but for the reliance of the defendants upon said representations releasing said parties from their covenants of said warranty would not have been consent-

ed to or acquiesced in by said defendants in said cause.

Plaintiffs further alleged that said $5,000 so paid in cause No. 3197 was paid under the belief that same was paid in the acquisition of the title under plaintiffs in that suit of 320 acres of land, and not 140 acres, as has since developed was done; that said $5,000 was paid in consideration of 320 acres of land, and the judgment was made and entered under a mistaken statement of facts, these plaintiffs and defendants in said other case believing that the Fidelity Lumber Company, by said decree being vested in 320 acres of the Marinda Hyde survey by virtue of said judgment, paid the consideration by said misunderstanding of the case as aforesaid, and they pleaded a failure of consideration as additional grounds for relief.

Defendant W. A. Johnson answered by general demurrer and special exceptions, plea of general denial, and specially admitted some and denied some of the allegations of plaintiffs' petition; his pleading as a whole being tantamount to a general denial. He interposed a cross-action against the plaintiffs in this suit, in which he sought for himself and his codefendants to recover the title and possession of the 320 acres of land in controversy.

All the other defendants answered, but, with the exception of Presley K. Ewing, urged only such defenses as could have been proved under a general denial in so far as the issues herein presented are concerned. However, the defendant S. M. Johnson, answering for himself and his codefendants, Mrs. Alice A. Mahon, H. L. McCorkle, Ashley W. Cullum, Jr., Thomas Marvin Cullum, Jr., Annie Louise Cullum, A. W. Cullum, John T. Baldridge, Mrs. Miranda Grantham, Mrs. D. P. Foster, Mrs. Jennie Ercanbrack and W. W. Ercanbrack, Mrs. Rachael Barrett, R. B. Barrett, and W. W. Baldridge, whom he represented as attorney in fact, interposed a cross-action against the plaintiffs, to recover the land in suit in the event the court should set aside the judgment rendered in cause No. 3197.

The defendant Ewing, in addition to a general denial, and affirmative allegations of facts which were probably proper under a general denial, further alleged that the parties purchasing from the plaintiffs in said compromise suit purchased and bargained by compromise in effect for a quitclaim of such title or interest as such plaintiffs might have had by chance of a half interest in the Marinda Hyde survey, and nothing more, and that if the attorney, Silas M. Johnson, knew of outstanding heirs of Marinda Hyde, or caused any suppression of such fact, same was with the actual knowledge and with the concurrence of said purchasers, through their attorney, with the intention to take a chance, which he alleged is commonly done in similar transactions, of such outstanding

heirs asserting or not successfully asserting adverse claims, or of their interests not being sufficient to reduce the benefits of the purchasers below what in any event would be required; and, further, that the market and real value of the interests of such purchasers actually by said compromise judgment of the plaintiffs therein was equal to or greater than the price paid therefor in settlement, and said purchasers have thereby suffered no damage by such purchase, having by such compromise gotten as much or more than the market or real value than they paid for it.

He further alleged that the part of the said compromise judgment relative to discharge of alleged liability under the warranties of title was separate and distinct, of a different subject-matter, and between different parties from the compromise part between the plaintiffs therein and their purchasers, and with neither such warranty liabilities nor the scope or extent of such were the plaintiffs in said former suit concerned, and that, if the provision in the compromise judgment as to release from the warranties was improper, relief may be had as to it so as to remove the prejudice therefrom as between the parties thereto, without interference with said compromise purchase as between the plaintiffs therein and their purchasers, and that such should be done if the plaintiffs are otherwise entitled to relief.

He further answered by cross-complaint against all the other parties to the suit, alleging that, if said compromise judgment be set aside, then he and his coplaintiffs in said former suit, including Silas M. Johnson and W. A. Johnson, who were defendants in this suit, are the owners in fee simple, and entitled to the possession of an undivided half of the alleged Marinda Hyde survey in different interests as among themselves, and in that event the adverse claim thereto of the other parties to the suit is without right, and the same is by them wrongfully withheld, to great damage of the defendant and said co-owners; and he prayed that, in the event the court should set aside said compromise judgment, then that the court adjudge recovery of the premises in controversy to him and his said coplaintiffs in the former suit, including Silas M. and W. A. Johnson, as their interests may appear.

The case was tried before the court without a jury, who, upon the conclusion of the evidence, entered judgment in substance that the plaintiffs herein (appellants) are not entitled to any relief from the defendants who were the plaintiffs in cause No. 3197, entitled Presley K. Ewing and others against Thompson Bros. Lumber Company, as against the final judgment which the court rendered therein on February 15, 1913, wherein the Fidelity Lumber Company acquired all the right, title and interest of the plaintiffs in such former suit in and to an undivided half interest, being 320 acres of the Marinda Hyde survey, but finds that so much of said former judgment as adjudicates the absolute discharge of S. F. Carter and J. P. Carter and the National Exchange Bank of Dallas (now the American National Exchange Bank of Dallas), the warrantors of title, upon the payment of $5,000, instead of their discharge to the extent of such payment, was entered by mutual mistake of all the parties affected thereby, and in so far should be canceled and annulled so as to allow the plaintiff Fidelity Lumber Company the benefit of said warranties applicable to said undivided 320 acres in excess of the $5,000 paid, but that, it appearing to the court that the Fidelity Lumber Company actually acquired from plaintiffs in said former suit by said judgment at least an undivided 145 acres of said undivided 320 acres of said Hyde survey, in either event exceeding in real and market value at the time the amount that was paid on said warranties, said judgment in so far is not disturbed, but confirmed, and that consequently plaintiffs herein have suffered no damage or prejudice in that behalf if such payment is allowed only as a credit on said warranty liabilities, the court being of opinion that such result would afford the plaintiffs all equity to which they are entitled.

It was therefore decreed by the court that the plaintiffs Fidelity Lumber Company, J. L. Thompson, Hoxie H. Thompson, Alexander Thompson, Thompson Bros. Lumber Company, and E. B. Parker, trustee, take nothing by their suit against the defendants herein who were plaintiffs, or in the right of plaintiffs, in said former suit No. 3197, to wit, Presley K. Ewing, Silas M. Johnson, W. A. Johnson, Mrs. Alice A. Mahon, H. L. McCorkle, Ashley W. Cullum, Jr., Thomas Marvin Cullum, Jr., and Alice or Annie Louise Cullum, minors, and their father, A. W. Cullum, John T. Baldridge, Mrs. Miranda Grantham, Mrs. Jennie Ercanbrack, W. W. Ercanbrack, Mrs. D. P. Foster, Mrs. Rachael Barrett, R. B. Barrett, and the heirs of W. W. Baldridge, deceased, to wit, Minnie L. Massie and her husband, James S. Massie and Charles Baldridge. It was further decreed that said judgment of, to wit, February 15, 1913, in cause No. 3197, so far as it discharges the defendants S. F. Carter and J. P. Carter, and the American National Exchange Bank of Dallas, from said warranty liabilities absolutely as concerns said undivided 320 acres of said Marinda Hyde survey instead of to the extent only of their payment of $5,000, be in so far canceled and annulled, and that the plaintiff the Fidelity Lumber Company have its action or actions to recover of and from the defendants S. F. Carter and J. P. Carter and the American National Exchange Bank of Dallas the balance of their liabilities on their respective

warranties of title as concerns said undivided 320 acres of said Hyde survey in excess of, but only so far as in excess of, and after deducting said $5,000 with interest thereon at the rate of 6 per cent. per annum from February 15, 1913.

From this judgment the plaintiffs Fidelity Lumber Company and E. B. Parker, trustee, have appealed.

It may be well to set out at this point the findings of fact and conclusions of law of the trial court, viz.:

"In accordance with the request of the defendants S. F. Carter, J. P. Carter, and the American Exchange National Bank of Dallas, I below state the conclusions of fact and conclusions of law upon which the judgment in said case was based:

"(1) Marinda Hyde died about the —— day of ——, 1884, then owning as her separate property the Marinda Hyde 640-acre survey in Tyler county, Tex. She had never had any children. She left surviving her husband, W. T. Hyde, and several brothers and sisters, and the children of other brothers and sisters; these brothers and sisters and the children of the other brothers and sisters being hereinafter referred to as heirs of the said Marinda Hyde.

"(2) On December 23, 1886, the said W. T. Hyde conveyed the whole of said survey to Wm. S. Peters, from whom the same passed by regular chain of title down to the Fidelity Lumber Company; the deed to the last-named company being made about the time of the institution of cause No. 3197 on the docket of this court, entitled Presley K. Ewing et al. v. Thompson Bros. Lumber Company et al., hereinafter referred to.

"(3) One of the links in said chain of title was a deed of date of October 26, 1898, from the American Exchange National Bank of Dallas to the Tyler County Land & Lumber Company, which deed was a general warranty deed conveying the Marinda Hyde survey and other surveys in consideration of the sum of $8,989. The number of acres conveyed by this deed was ——, and the amount of said consideration paid for said Marinda Hyde was $2,720.

"(4) Another link in said chain of title was a general warranty deed of date of July 2, 1906, from the Emporia Lumber Company, a corporation, to J. L. Thompson, Alexander Thompson, and Hoxie H. Thompson, hereinafter called the Thompsons, conveying said Marinda Hyde survey and many other tracts of land, a sawmill, tram railway, and other property, the recited consideration in this deed being $500,000, but the amount paid to the Emporia Lumber Company for said lands and other property was $1,000,000. There was no definite proof as to what amount was paid to the Emporia Lumber Company for the Marinda Hyde survey.

"(5) On November 12, 1906, said Thompsons conveyed to the Thompson Bros. Lumber Company the lands and other property conveyed to them by the Emporia Lumber Company, and on December 31, 1906, the said S. F. Carter and J. P. Carter, the owners of nearly all the stock of the Emporia Lumber Company, entered into a contract with said Thompsons reciting the said conveyance to them by the Emporia Lumber Company and bound themselves to warrant and defend the premises described in said deed made by the Emporia Lumber Company, unto the said Thompsons and their assigns, and guaranteed and warranted that the title of said land and property was in said Emporia Lumber Company at the time of its conveyance thereof; such obligation being assumed in the following proportions, viz., by S. F. Carter three-fourths, and J. P. Carter one-fourth.

"(6) Cause No. 3197 was instituted in the district court of Tyler county, Tex., on the 14th day of June, 1912; the same being an action of trespass to try title, for the recovery of 320 acres, being an undivided half of the Marinda Hyde 640-acre survey in said county. The plaintiffs in said cause were Presley K. Ewing, Mrs. Alice A. Mahon and her husband, S. A. Mahon, H. L. McCorkle, Ashley W. Cullum, Thomas Marvin Cullum, Jr., Annie Louise Cullum, A. W. Cullum, John T. Baldridge, Mrs. Marinda Grantham, Mrs. Jennie Ercanbrack, W. W. Ercanbrack, Mrs. D. P. Foster, Mrs. Rachael Barrett, R. B. Barrett, and W. W. Baldridge; and the original defendant in said cause No. 3197 was the Thompson Bros. Lumber Company. Afterwards the death of the plaintiff S. A. Mahon was suggested, and the Fidelity Lumber Company was made a defendant, it having purchased the land in controversy from one who had purchased same from Thompson Bros. Lumber Company. The defendants in said cause No. 3197 made S. F. Carter and J. P. Carter, their alleged warrantors, parties defendants, and they made a party their warrantor the American Exchange National Bank. The style of said cause No. 3197 was Presley K. Ewing et al. v. Thompson Bros. Lumber Company et al., and the attorneys for plaintiffs were Presley K. Ewing, S. M. Johnson, and W. A. Johnson; their fee to be one-half of all land recovered by them.

"(7) The plaintiff took depositions in cause No. 3197 by which they proved that they, and those whose interest in said land had been acquired by said Ewing, were the only heirs of said Marinda Hyde. These depositions were examined by the attorneys for all the defendants in the case or by persons authorized to represent them. This examination was made by the attorneys for the Fidelity Lumber Company before the term of court at which the judgment in cause No. 3197 was rendered and by the attorney for S. F. Carter and J. P. Carter at the time the agreement was made for the rendition of said judgment, and at such time the attorney for the said Carters called the attention of said attorney, S. M. Johnson, who was managing the prosecution of said cause, to the fact that there were some slight defects in the proof made by said depositions, when the said Johnson submitted to them certain affidavits of heirship and stated that he had investigated the question of heirship fully and that the only heirs of Marinda Hyde were the plaintiffs and those whose interests had been acquired by said Ewing. This statement of said Johnson was communicated to the attorneys for the other defendants. Thereupon, all the plaintiffs and defendants agreed in writing upon the entry of the judgment which was rendered in said cause No. 3197, all the defendants then believing that by said judgment the said Fidelity Lumber Company was acquiring the interests of all the heirs of said Marinda Hyde in an undivided half of said survey, and the moneys paid by the said Carters and the American Exchange National Bank of Dallas as shown by said judgment was paid under the belief that the Fidelity Lumber Company was acquiring such title by such judgment and was paid to protect the title of said Fidelity Lumber Company. That the said Ewing knew nothing of the said representations of said Johnson and all his knowledge as to who were the heirs of said Marinda Hyde was such as he acquired from S. M. Johnson and gave him the same information as that above stated to have been given to the attorney for the Carters.

"(8) That the judgment rendered in said cause No. 3197 was rendered on the 15th day of February, 1913, and is substantially set forth in plaintiff's petition in this cause, and upon the rendition thereof the said S. F. Carter and J. P. Carter and the American Exchange National Bank paid to the plaintiffs in said cause No. 3197 the sum of $5,000; and afterwards.

paid the court costs in said cause amounting to $52.70, of which sum of $5,000 the said Carters paid the sum of $3,336.10 directly to the plaintiffs and under the orders of this court paid to the clerk of this court for the minor plaintiffs the sum of $250, and the said American Exchange National Bank paid the sum of $1,413.-90, and said sum of $52.70 was paid by the said Carters to whom the sum of $——— was repaid by the said bank. Said sum above stated to have been paid to plaintiffs was paid to said Presley K. Ewing to be divided between himself, the other plaintiffs, and the said S. M. and W. A. Johnson, and the same was by him so divided and paid, some of the persons to whom parts of said money were paid being now insolvent, and said Ewing (and) probably others are solvent; some of them do not live in the state of Texas.

"(9) I find that at the time of the rendition of said judgment in cause No. 3197 there were heirs of Marinda Hyde other than those who were parties to said cause and those whose interests were owned by said Ewing, and that these other heirs then owned undivided interests in said 320 acres, amounting to 150 or 160 acres thereof. That such fact was, at the time of the rendition of said judgment, unknown to any of the defendants in said cause No. 3197, was unknown to said Ewing, but was known to the said S. M. Johnson and some of the other plaintiffs, and especially to one or more of the plaintiffs whose depositions were taken in said cause. That the heirs of said Marinda Hyde who were parties to said cause No. 3197 were residents of Texas and Oklahoma, and the heirs not made parties thereto were residents of the state of Mississippi.

"(10) The plaintiffs in this cause did not in their pleadings offer to repay to the said S. F. Carter and J. P. Carter or the American Exchange National Bank of Dallas, or to either of them, the sums so paid out by them at the time of the rendition of said judgment in cause No. 3197, nor did they, or any other person, on the trial of this cause, offer to repay said sums or any part thereof.

"(11) In December, 1913, and during the early part of 1914, the Fidelity Lumber Company cut and appropriated standing timber on said survey of the value of $6,000 or $7,000.

"(12) In said judgment rendered in said cause No. 3197, after the judgment for the defendant Fidelity Lumber Company for the land, and after the recital of the payment of said sums of money by the warrantors, it was recited and provided as follows: 'And, the said defendants S. F. Carter and J. P. Carter having protected the title of its vendees to said land, it is therefore ordered and adjudged that they be released from any further liability to the Thompson Bros. Lumber Company, and Fidelity Lumber Company, and E. B. Parker on account of the covenants of warranty relating to said land and contained in the deed of date of July 2, 1906, from the Emporia Lumber Company to J. L. Thompson conveying said land, and the covenants of warranty relating to said land and contained in the contract of date of December 31, 1906, by which they the said S. F. Carter and J. P. Carter became bound by the covenants of warranty contained in said deed from said Emporia Lumber Company to said J. L. Thompson, Hoxie H. Thompson and Alexander Thompson, and which deed and contract are pleaded in the answer therein of said S. F. Carter and J. P. Carter. And as between the defendants S. F. Carter and J. P. Carter and their remote warrantor, the defendant the American National Exchange Bank of Dallas, Tex., it is agreed between them in open court that the said S. F. Carter and J. P. Carter on account of the payment by them of said sums of money to acquire from plaintiffs title of the said land and to compromise this suit are entitled to recover

from said American Exchange National Bank the sum of fourteen hundred and thirteen and 90/100 ($1,413.90) dollars. It is therefore ordered and adjudged that the said S. F. Carter and J. P. Carter do have and recover of and from said American Exchange National Bank of Dallas, Tex., the said sum of fourteen hundred and thirteen and 90/100 dollars with interest from this date at the rate of 6 per cent. per annum, and, this sum being paid in open court, the said American Exchange National Bank is adjudged to be released from all further liability to any of the defendants herein on the covenants of warranty contained in the deed of date of October 26, 1898, from the National Exchange Bank of Dallas, Tex., to the Tyler County Land & Lumber Company, in so far as said covenants relate to the land above described.' Said recital and provision was made in said judgment because all the defendants in said cause No. 3197, including said warrantors, believed that all those interested in said land, either as heirs of said Marinda Hyde or purchasers from such heirs were plaintiffs in such cause, and because the said warrantors had paid said sums to protect the title of the Fidelity Lumber Company to said land, and were therefore entitled to be discharged from their covenants of warranty and said judgment containing such recitals and provisions were therefore agreed to by them.

"(13) This consent judgment was pursuant to an agreement exclusively between the plaintiffs in the former suit and the warrantors of title for what was in effect a chance of sale of their interest by way of compromise, with a distinct term stipulated by the warrantors that the deal would be consummated only in the event of a favorable report from their attorney, Judge J. C. Matthews, upon independent investigation into the title, including the heirship.

"(14) The warrantors and their warrantee, Fidelity Lumber Company, consented to the provision absolutely discharging the warrantors on their warrant liability, which was materially greater than the amount paid by them, instead of to the extent only of their payment, under a mutual mistake of fact, both believing that the plaintiffs in the former suit were or represented all the heirs of Marinda Hyde, whereas they were and represented only a part of such heirs, about half in interest.

"(15) The averments of fraud in the petition of the plaintiffs herein are not sufficiently sustained by the evidence for relief.

"(16) The plaintiff herein Fidelity Lumber Company acquired under the judgment in the former suit from the plaintiffs therein an undivided interest of 160 acres in the survey there in suit, or at the least 145 acres, in either event of the market and real value, then and now, equal to or greater than the amount paid such plaintiffs in the former suit under the compromise mentioned, so that it has suffered no prejudice and will suffer none if the warrantors are discharged only to the extent of their payment.

"(17) Presley K. Ewing was a plaintiff in the former suit, having purchased the interest of some of the heirs, and the attorneys for the plaintiffs therein, Silas M. Johnson and W. A. Johnson, associated him with them as attorney; but neither he nor W. A. Johnson made any representations as to the heirs, and they had no knowledge and did not assume to have any as to whether the heirs brought forward in the former suit were or were not all the heirs, and the only information they had in that regard was derived from the attorney, Silas M. Johnson.

"(18) When the settlement was made, Presley K. Ewing, desiring personally to see that the money was properly distributed, received $4,750 of the $5,000 compromise money, $3,-336.10 thereof from S. F. and J. P. Carter and $1,413.90 from American National Exchange

Bank of Dallas, the balance of $250 being paid into the registry of the court for the minor plaintiffs, and duly distributed such fund so received among the persons entitled thereto, who ratified what he did, and such was done and completed by him in good faith without any knowledge or intimation that the heirs brought forward in the former suit were not the only heirs of Marinda Hyde.

### "Conclusions of Law.

"The plaintiffs herein are not entitled to relief against the defendants who were plaintiffs in the former suit for several reasons.

"The plaintiff warrantee, Fidelity Lumber Company, suffered a disappointing loss of gain, but no claim is made of equitable abatement for partial failure of consideration, and, if the claim had been made, such equitable abatement is not allowable in a chance transaction such as that in question. Clark v. Altizer (Tex. Civ. App.) 145 S. W. 1042, 1044, error refused; Scott v. Slaughter, 35 Tex. Civ. App. 524, 526, 80 S. W. 643; McDonough v. Martin, 88 Ga. 675 [16 S. E. 59, 18 L. R. A. 343]; Shackleford v. Wright (Ky.) 16 S. W. 268; 29 Am. & Eng. Ency. of Law (2d Ed.) pp. 632, 633, and cases cited. Similarly, relief from mutual mistake is not applicable to 'chance' bargains. Hood v. Todd (Ky.) 58 S. W. 785.

"The averments of fraud for relief not being sustained, no relief is grantable thereon; but, if it were otherwise, 'relief against a judgment or decree cannot be had in equity by bill of review or otherwise on the ground of fraud in obtaining the same, unless the fraud has resulted in damage or prejudice.' 14 Am. & Eng. Ency. of Law (2d Ed.) pp. 137–139, with copious citation of authorities; 20 Cyc. pp. 102, 103. The opinion in Lewis v. Brookdale Land Co. [124 Mo. 672], 28 S. W. 324, 328, concludes: 'It requires the concurrence of both fraud and injury to warrant equitable relief.' Bigby v. Powell [25 Ga. 244], 71 Am. Dec. 168, 170, holds that, 'when a suitor presents himself to a court of chancery for relief, the party must show, not only that he was misled and deceived, but that he was endamaged thereby.' The result of the authorities on the subject is thus stated·in 29 Am. & Eng. Ency. of Law (2d Ed.) pp. 663, 664, with citation of authorities from many states: 'If the representation does not result in damage or prejudice to the party to whom it was made, the contract will not be rescinded at his instance.'

"In determining the 'damage,' it is held that the real value at the time of purchase, and not necessarily the market price, is controlling, 14 Am. & Eng. Ency. of Law (2d Ed.) p. 188. And, as held by our Supreme Court in George v. Hesse, 100 Tex. 47 [93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456], 'damage or pecuniary loss' is to be arrived at ·by 'the difference between the value which he (plaintiff) has parted with and the value of that which he has received under the agreement,' and that 'what the plaintiff might have gained is not the question, but what he has lost ·by being deceived into the purchase.'

"It follows that the plaintiff Fidelity Lumber Company, having suffered no damage or prejudice as concerns the plaintiffs in the former suit, is in no position to have that judgment rescinded or set aside.

"It is familiar law that in a proper case a judgment may be ·annulled or enjoined for fraud in some material extrinsic or collateral matter operating injuriously, such as preventing a just defense being made, but not where the fraud is in the very issues of the case, necessarily determined by the judgment; and, as the plaintiffs in the former suit were suing as tenants in common, making it necessary for them to establish the quantum of their interest for recovery, and as their being or not the only heirs of Marinda Hyde was a material fact directly in issue, the judgment could not be set aside for fraud in that regard even if the other reasons given for withholding relief were insufficient. United States v. Throckmorton, 98 U. S. 61 [25 L. Ed. 93]; United States v. Gleeson (U. S. App.) 90 Fed. 778 [33 C. C. A. 272]; Moore v. Moore (Tex. Civ. App.) 63 S. W. 347; Gilbert v. Cooper [43 Tex. Civ. App. 328], 95 S. W. 753; Watts v. Bruce [31 Tex. Civ. App. 347], 72 S. W. 258; Williams v. Nolan, 58 Tex. 708; Pomeroy's Eq. Jur. & Eq. Rem. § 656. In Hartford Fire Ins. Co. v. King, 31 Tex. Civ. App. 636, 73 S. W. 71, it is held 'a final judgment on the merits is as conclusive if entered by consent as if entered after contest.'

"The provision of the former judgment for absolute discharge of the warrantors being separable, and between the warrantors and warrantee only, and the mistake thereof being relievable without setting the judgment aside, by reforming the provision under the averments and general prayer of the petition, so as to obviate the mistake, whereby equity will be done between the parties without prejudice to either that relief may be granted.

"The plaintiffs have not offered to do equity so as to entitle the Fidelity Lumber Company to greater relief, because there is no offer to restore to the warrantors the moneys they paid if the entire judgment is set aside, but to remit them by actions therefor to plaintiffs in the former suit, numerous and scattered, with some minors, and others probably insolvent.

"The defendant Presley K. Ewing, having distributed the moneys collected by him in good faith and without notice of any deficiency of heirs, could not be held, even if the former judgment were set aside, for any moneys paid by him as agent to others, but only for his own share, and this is especially true under the averments and specific prayer of the plaintiffs' petition in that regard. Vogel v. Ball, 69 Tex. 604, 607 [7 S. W. 101]; Denison v. League, 16 Tex. 408; Behrens Drug Co. v. Hamilton (Tex. Civ. App.) 45 S. W. 622; Silliman v. Gano, 90 Tex. 649 [39 S. W. 559, 40 S. W. 391].

"With respect to the claim that the former judgment was not final as not disposing of the nominal defendants Ferris and Lane, the contention is not sound, as the judgment was in effect final as to them, though not naming them. Whitmire v. Powell, 103 Tex. 233, 236 [125 S. W. 889]; Moore v. Powers Bros., 16 Tex. Civ. App. 436, 41 S. W. 707; Wilson v. Smith, 43 S. W. 1086, 17 Tex. Civ. App. 188, 194, and cases cited. If it were otherwise, the judgment might be, and it has been, amended by dismissal of the parties nunc pro tunc. Benge v. Panhandle Land Co. (Tex. Civ. App.) 145 S. W. 318, 319; Doty v. Caldwell (Tex. Civ. App.) 38 S. W. 1025; Coleman v. Zapp, 105 Tex. 491 [151 S. W. 1040].

"In accordance with the above conclusions, the decree herein has been entered."

The first and second assignments of error will be considered together, viz.:

(a) "Under the pleadings and proof in this case, the trial court erred in refusing to set aside the judgment rendered on the 15th day of February, 1913, in cause 3197, in the district court of Tyler county, styled, Presley K. Ewing et al. v. Thompson Bros. Lumber Company et al., because the plaintiffs herein alleged and proved that the judgment entered in that cause was procured by the fraud of S. M. Johnson and of certain plaintiffs in that case, other than Presley K. Ewing, in knowingly representing affirmatively that plaintiffs in said case were all of the heirs of Marinda Hyde, deceased, and in concealing from the plaintiffs herein the fact, which was known to them, that said plaintiffs represented less than one-half of the interest of the heirs of Marinda Hyde, thereby inducing the entry of a judgment by which.

the Fidelity Lumber Company acquired only 145 acres of land under the mistaken belief that it was acquiring 320 acres, and the Fidelity Lumber Company releasing under the terms of said judgment its warrantors from further liability on their warranty, which liability is largely in excess of the amount paid by said warrantors as a consideration for said judgment, all of which is alleged in the petition on file in this case."

(b) "Under the pleadings and proof of this case, the trial court erred in refusing to set aside the judgment rendered on the 15th day of February, 1913, in cause No. 3197, in the district court of Tyler county, styled Presley K. Ewing et al. v. Thompson Bros. Lumber Company et al., because the plaintiffs herein alleged and proved that the judgment entered in that cause was procured under the mistaken belief on the part of Presley K. Ewing and W. A. Johnson, attorneys who were employed by and represented the plaintiffs in said action, and the defendants and warrantors in said action and their respective attorneys, which mistake was mutual as to all said parties that said plaintiffs in said cause No. 3197 were or stood in the right of all of the heirs of Marinda Hyde, deceased, and owned the 320 acres of land described in plaintiffs' petition in said suit, whereas, in truth and in fact the said plaintiffs and those who stood in their right constituted less than one-half in interest of the heirs of Marinda Hyde, and, but for said mutual mistake and the mistaken belief of the parties, said judgment in its terms would not have been entered as the decree of said court in said cause; and by the terms of said judgment the said Fidelity Lumber Company acquired title to approximately 145 acres of land instead of 320 acres of land, and its warrantors were released from further liability in consideration of a sum for less than their real liability was under their warranty."

The proposition under these assignments is:

"A judgment procured by fraud or mutual mistake will be set aside when a direct action is brought for that purpose in the court in which such judgment was rendered and all of the parties to the judgment are before the court."

To oppose the same, the following counter proposition is made:

"The district court correctly held that the relief sought was not grantable for fraud as against Ewing and the other defendants similarly situated, if for no other reasons:

"(1) Because the warrantee, Fidelity Lumber Company, was not a party or privy to the compromise settlement between the warrantors, Carters and American Exchange National Bank, and plaintiffs in the former suit, as to which transaction alone it was within the scope of S. N. Johnson's agency authority to act for his coplaintiffs, and as to which alone he assumed to act for such coplaintiffs, who were interested only in the consummation of that particular transaction; wherefore his fraud, if any, towards a third party, the warrantee, while it might involve himself, could not be imputed to Ewing or other coplaintiffs in his attitude.

"(2) Because S. M. Johnson's misrepresentations, if any, were not to the third party, the warrantee, with which he had no dealings, or to any class of persons of which he was one, and hence were not actionable at its complaint, especially as it was not a party or privy to the contractual transaction into which Ewing and the coplaintiffs in his attitude had entered.

"(3) Because Matthews' independent investigation of the title, including the heirship, being an express condition of the compromise agreement between the warrantors and plaintiffs in the former suit, S. M. Johnson was by plain exclusion without authority from his coplaintiffs to dispense, either by fraud or agreement, with that stipulation as to such coplaintiffs without their knowledge or consent, so that demonstrably his fraud in that regard could not be imputed to Ewing or those in his attitude.

"(4) Because S. M. Johnson's statement as to the claimants being all the heirs was plainly but an opinion or conclusion from undisclosed and unasked for information he may have obtained, and was necessarily understood to have been nothing more, as it was known he had no knowledge of the heirship except information he might have gotten from others.

"(5) Because there was no evidence to show, at least the court below was warranted in finding it did not show, that either Matthews, the alter ego of the warrantors, or C. L. Carter, or Joe W. Thomas, the alter ego of the Fidelity Lumber Company, relied upon any statement by S. M. Johnson in concluding that the plaintiffs in the former suit were or represented all the heirs of Marinda Hyde."

The judgment in cause No. 3197, Ewing v. Thompson Bros. Lumber Company, sets out the following:

"After hearing the pleadings and evidence together with the admissions of fact made in open court, it appears to the court that since the last term of this court the said S. F. and J. P. Carter have entered into a compromise of this suit with the plaintiffs, and have purchased from plaintiffs the land in controversy in this suit, and hereinafter described, and have paid plaintiffs for said land the sum of $5,000, the payment of such purchase money being in open court admitted by the plaintiffs, and it further appearing to the court that said compromise and purchase by said S. F. and J. P. Carter inures to the benefit of said Fidelity Lumber Company, which is by reason of said facts entitled to judgment for said land; it is therefore, by the court, considered, ordered, and adjudged that the said defendant the Fidelity Lumber Company do have and recover of and from the plaintiffs herein the title and possession of the land described in the plaintiff's amended petition, and which is one undivided half of a tract or survey of land described as follows: All that certain 640 acres survey of land situated in Tyler county, Tex., patented to the heirs of Marinda Hyde," etc.

[1] S. F. and J. P. Carter were the warrantors of the Fidelity Lumber Company. In the original suit, No. 3197, Ewing v. Thompson Bros. Lumber Company, plaintiffs sued the Thompson Bros. Lumber Company and the Fidelity Lumber Company. In this action Presley K. Ewing was a party plaintiff, as well as the others who claimed to be all of the heirs of Marinda Hyde, and this petition was signed by S. M. Johnson as one of the attorneys for the plaintiffs. The answer of the defendant Thompson Bros. Lumber Company impleaded S. F. and J. P. Carter on their warranty, and, in an extended answer by S. F. and J. P. Carter, the execution of this warranty was admitted, and the American Exchange National Bank of Dallas was impleaded as their warrantor. This record discloses that there was no other compromise agreement or settlement than that evidenced by this judgment. Being a party to the compromise agreement, and being the victim of S. M. Johnson's fraud and the victim of Mr. Ewing's mistake and Judge Matthews' mistake, is evident to the mind of this court. However,

the declaration is made that the Fidelity Lumber Company is not in privity with the compromise settlement. "Privity" has been defined as being "a connection or bond of union between parties as to some particular transaction; mutual or successive relationship to the same right of property."

By the decree in No. 3197, there passed to the Fidelity Lumber Company the title formerly held by the plaintiff to about 132 acres of land. To say that there was no privity existing between the Fidelity Lumber Company and plaintiffs in cause No. 3197, through that judgment, occurs to us as being rather inconsistent. By virtue of the compromise agreement evidenced by this judgment, there is a mutual or a successive relationship to the same rights of property. It is contended, however, that because Johnson's misrepresentations were made to Judge Matthews and to Mr. Ewing, and that although the Fidelity Lumber Company was a party to the compromise decree, induced by the fraudulent representations of Johnson, Mrs. Foster, and Fannie Washington, and that through said decree, the Fidelity Lumber Company is in privity with the plaintiffs in said former suit. It is further contended that Judge Matthews was to make an investigation of the heirship. Such investigation was made through the deposition of Mrs. Foster, who falsely testified at the instance of S. M. Johnson, omitting the names of her sister's children, who were neighbors of hers, and other heirs, and further, by the affidavit of Fannie Washington, who swore that she and her brother, D. C. Lea, are the only surviving heirs of her mother and father, as far as she knew from family history or otherwise, and by statements made several times by S. M. Johnson that the plaintiffs were all of the heirs of Marinda Hyde, and by the letter from Mr. Ewing, in which he stated to Judge Matthews: "We regard our title as clear as yours."

It appears to this court that, if Judge Matthews undertook an independent investigation of the heirship, this obligation was discharged by him. The facts seem to be, as shown by the deposition of H. L. McCorkle, one of the plaintiffs in cause No. 3197, that there were nine children of Matilda Lea, and, as shown by the deposition of C. C. Gibson, that a number of these children left descendants, and as shown by the deposition of Samantha Herrold, that Matilda Lea had ten children, and their names are given by Samantha Herrold, the names of the persons they married, and their residences are also given by her.

One of the plaintiffs in this case testified with reference to heirship, and, when called upon to do so, failed to disclose an affirmative fact, unquestionably within her knowledge, as to the other living heirs of Marinda Hyde. The affidavit of Fannie Washington, who was formerly a Lea, was supplied to Judge Matthews for his information, and it is shown by relatives of Mrs. Washington to be absolutely untrue. As has been stated above, several times, the declaration was made in writing, from S. M. Johnson, stating affirmatively that the plaintiffs in cause No. 3197 were in fact all of the heirs of Marinda Hyde, when it later was found that the facts were, at that time, that Johnson knew from the statements made to him by Mr. McCorkle, his client, and from statements made to him by Mrs. Foster, that his statement was untrue. In view of the fact that plaintiffs represented only about 131 acres in interest, in our judgment, it cannot be assumed that S. M. Johnson did not know of the existence of the other heirs. He stated to McCorkle that he had written and made inquiry in Mississippi for them, but that statement is shown to be false by the testimony of the collateral heirs of Marinda Hyde, who resided in Mississippi.

It is further contended that S. M. Johnson's statement with reference to heirship was but an opinion or conclusion and that it was necessarily so understood.

Mr. Ewing testified as a witness, and presented to the court S. M. Johnson's written declarations with reference to the Marinda Hyde heirs; but, as repeatedly stated above, Johnson often asserted as a fact, and not as an opinion, that the plaintiffs were all of the heirs of Marinda Hyde, and in Johnson's letter of December 11th the following language is used:

"Of course, in the event of settlement we would furnish you affidavits of heirship. There is no shadow of a doubt that our clients are entitled to half of this survey."

It occurs to this court that the record shows clearly that Johnson's statements were not matters of opinion or conclusions, but were declarations of fact.

It is further contended that there was no evidence to show that Judge Matthews or C. L. Carter or Joe W. Thomas, representing the warrantors and Fidelity Lumber Company, relied upon any statement by S. M. Johnson in concluding that the plaintiffs were, or were so represented by him to be, all of the heirs of Marinda Hyde.

Johnson, who seemed to be the manager of the prosecution in said cause, submitted to the attorneys for the Carters certain affidavits of heirship, and stated that he had investigated the question of heirship fully, and that the only heirs of Marinda Hyde were the plaintiffs and those whose interests had been acquired by Ewing. This statement of Johnson was communicated to the attorneys for the other defendants. Thereupon and at that time all the plaintiffs and defendants agreed in writing upon the entry of the judgment which was rendered in cause No.

3197, and it is clear to this court that the defendants, believing that by said judgment the said Fidelity Lumber Company was acquiring the interests of all of the heirs of said Marinda Hyde to an undivided one-half interest in said survey, and the moneys paid by the said Carters and the American National Exchange Bank of Dallas, as shown by said judgment, was paid in the belief that the Fidelity Lumber Company was acquiring such title by such judgment, and was paid to protect the title of said Fidelity Lumber Company. The court in its findings uses the following language:

"I find that at the time of the rendition of said judgment in cause No. 3197 there were heirs of Marinda Hyde other than those who were parties to said cause and those whose interests were owned by Ewing," "that such fact was at the time of the rendition of said judgment unknown to any of the defendants in cause No. 3197, was unknown to said Ewing, but was known to the said S. M. Johnson and some of the other plaintiffs, and especially to one or more of the plaintiffs whose depositions were taken in said cause."

Matthews testified that he was induced to make the settlement because he thought the depositions he had examined and the affidavits furnished him by Johnson, in connection with S. M. Johnson's statement, were such that they should make a compromise. He further says:

"I believed those to be all of the heirs, or I would not have made the settlement," and further, "My conversation with Mr. Johnson was in a day or two of the entering of the judgment at that term of court in which the judgment was entered," and further, "Then I prepared the judgment and went to Mr. Thomas' office, and Mr. Thomas read the decree over and O. K.'d it for the Fidelity Lumber Company and E. B. Parker, trustee, and then I signed it as the attorney for the Carters, and S. M. Johnson signed it as attorney for the plaintiffs." "After it was signed up I came into court and notified the court that we had the decree prepared, and he put his O. K. on it, and it was entered. I do not know who was present. Mr. Johnson and Mr. Thomas, I think, were present in court."

Therefore the understanding arrived at by Matthews in reliance upon the statements of Johnson and the depositions and affidavits was communicated to Joe W. Thomas, who O. K.'d the judgment in said cause No. 3197 for the Fidelity Lumber Company. Mr. Thomas testified:

"I thought from what Judge Matthews said that it was his understanding that the plaintiffs in that suit were all of the heirs of Marinda Hyde; yes, that is all I relied upon."

[2] The trial court having, therefore, found as a fact as above stated, the conclusion follows as a matter of law that the fraud was supported by the testimony in the case. We have gone somewhat at length over the exhaustive briefs of the several parties, and in our judgment the testimony is amply sufficient to sustain the allegations with reference, not only to the fraud, but as to the mistake upon which the compromise judgment was entered. Therefore the first and second assignments of error are sustained. McMurray v. McMurray, 67 Tex. 665, 4 S. W. 357; Dick v. Collins, 30 Tex. Civ. App. 12, 68 S. W. 1015; Smith v. McDaniels, 170 S. W. 1070; Weir v. Carter, 169 S. W. 1114; Halliday v. Lambright, 29 Tex. Civ. App. 226, 68 S. W. 712; Avocato v. Dell 'Ara, 84 S. W. 443; Heidenhammer v. Loring, 6 Tex. Civ. App. 560, 26 S. W. 99.

The third and fourth assignments of error will be considered together, and are as follows:

(a) "The trial court erred in that portion of its judgment and decree herein in holding that the plaintiff Fidelity Lumber Company was entitled only to the relief of canceling the release of its warrantor's liability in excess of the sum of $5,000, and in holding that the trial court now could ascertain the present market value of the then market value of land, the title to which was then held by plaintiffs in said cause No. 3197, and charge the said Fidelity Lumber Company in the present suit with such market value as a credit on the liability of said warrantors."

(b) "The trial court erred in its findings of fact that there was no definite proof as to what amount was paid the Emporia Lumber Company for the Marinda Hyde survey, because the undisputed proof showed that the consideration was $3 per 1,000 feet for the standing timber upon the various tracts of land conveyed by the Emporia Lumber Company to Thompson Bros. Lumber Company, and the proof shows the estimated number of feet of standing timber upon said Marinda Hyde survey from all of which the amount paid for the Marinda Hyde survey was made to appear."

The following propositions are presented:

(1) "The warrantors, having warranted for 320 acres, on their own initiative sought to avoid their liability to their warrantees by purchasing the title which was being asserted against their warrantees. Instead of buying and delivering to their warrantees 320 acres, which was their duty, they acquired only 131 acres, and thus were entitled to release of their warranty only to that extent; but, owing to the proven fraud and proven mutual mistake, the warrantors entered a decree releasing themselves in full. Having by their own mistake or wrong paid $5,000 for 131 acres, instead of 320 acres, the loss should not be visited upon the warrantees, but upon the warrantors. Therefore the court erred in holding the innocent warrantees liable for the amount paid in excess of $131/320$ of the warranted liability, but appellants should have been permitted to assert the warrantors' liability to the extent of $188/320$ of the total warranty liability."

(2) "Where the title to a part of the land conveyed under covenants of general warranty has failed, the warrantors' liability under the warranty is this: 'The damages will bear the same proportion to the whole purchase money as the value of the part to which title fails bears to the whole premises estimated at the prices paid.' "

On the contrary, the counter proposition is urged that the court below correctly held that there was no definite proof as to the amount of the warranty liability, the proof showing such liability to be $3 per thousand feet for the standing timber as estimated by the parties, and there being no evidence as to what the estimated number of feet of standing timber was; therefore the court below, in setting aside the absolute discharge of the

warranty liability and limiting it to the payment of $5,000, granted to the Fidelity Lumber Company the fullest equity permissible to it under the evidence, for which reason alone the judgment here under complaint can be affirmed.

It is shown by the testimony that the land was sold on a timber estimate of $3 per thousand feet of standing timber on the 640 acres. The estimate of timber upon the 640 acres in the Marinda Hyde survey at that time was 4,000,000 feet. The total consideration for said 640 acres, upon the basis of $3 per thousand feet, would be $12,000. In the answer of the defendants S. F. and J. P. Carter in cause No. 3197, they alleged:

"That this cause, an action of trespass to try title, was instituted in the district court of said Tyler county about the 14th day of June, 1912, against the said Thompson Bros. Lumber Company for the recovery of said undivided half of said 640-acre tract of land, and the said Thompson Bros. Lumber Company ask that, in the event of a failure to title to said undivided half of said 640-acre survey, it have judgment against these defendants for the amount of purchase money therefor paid to the said Emporia Lumber Company, which amount it alleges was $12,000, with legal interest thereon from the 2d day of July, 1906, in their respective proportions, that is, against the said J. P. Carter for one-fourth, and against the said S. F. Carter for three-fourths of the amount so paid to said Emporia Lumber Company."

S. F. and J. P. Carter made a compromise with the plaintiffs in cause No. 3197, by which, upon the payment of $5,000 in cash to plaintiffs, the plaintiffs permitted a judgment to be rendered against them in favor of the Fidelity Lumber Company upon an undivided one-half interest in the land. The judgment appealed from decrees in effect that the judgment rendered in cause No. 3197 on February 15, 1913, in so far as it discharges defendants S. F. and J. P. Carter, and the American Exchange National Bank of Dallas from their warranty liabilities, absolutely only to the extent of their payment thereby made, to wit, $5,000, be canceled and annulled, and that the plaintiff Fidelity Lumber Company have its action or actions to recover from the defendants Carters and the American Exchange National Bank and the balance of their liabilities on their respective warranties of title as concerns said undivided 320 acres, but only so far as in excess of and after deducting said payment of $5,000, with interest thereon at 6 per cent. per annum from February 15, 1913, which shall be allowed as a credit on said warranty liabilities; $3,336.10 thereof on the warranty liability of S. F. and J. P. Carter, and $1,413.90 thereof on the warranty liability of the American Exchange National Bank.

The interests of the plaintiffs in cause No. 3197, who sued as heirs of Marinda Hyde, or standing in the place of such heirs, and whose title was vested in the Fidelity Lumber Company by the decree rendered in that case, amounted to only 131 and a fraction acres, say 132 acres, as follows:

| | |
|---|---:|
| H. L. McCorkle, 1/7 | 45.714 |
| Mrs. Alice A. Mahon, 1/5 of 1.7 | 9.143 |
| Cullum Heirs, 1.5 of 1.7 | 9.143 |
| W. H. Baldridge, 1/7 of 1/7 | |
| Jno. T. Baldridge, 1/7 of 1/7 | |
| Miranda Grantham, 1/7 of 1/7 | 39.18 |
| Rachael Barrett, 1/7 of 1/7 | |
| Mrs. D. P. Foster, 1/7 of 1/7 | |
| Jennie Ercanbrack, 1/7 of 1/7 | |

Presley K. Ewing acquired:

| | | |
|---|---|---:|
| Georgia Adler's 1/5 of 1.7 | 9.143.. | |
| Alena Smith's 1/5 of 1/7 | 9.143..18.286 | |
| D. C. Lea's 1/9 of 1/7 | .. | |
| Fannie Washington's 1/9 of 1/7 | ..10.16 | |

            131.626

The above, under the law of descent and distribution, from the depositions of witnesses in the case, who are the heirs of Marinda Hyde. After the rendition of the judgment in cause No. 3197, certain of the heirs of Marinda Hyde recovered a judgment against the Fidelity Lumber Company and its warrantors in the United States District Court, at Beaumont, for an undivided interest of 145 acres in the Marinda Hyde. Thereafter, certain other heirs of Marinda Hyde recovered a judgment against the Fidelity Lumber Company in the district court of Tyler county for an undivided interest of 15.33 acres in said survey.

[3, 4] The measure of damages in a suit upon general warranty of title to land is the purchase money, with interest at the legal rate from date of payment. Turner v. Miller, 42 Tex. 420, 19 Am. Rep. 47; Johns v. Hardin, 81 Tex. 41, 16 S. W. 623; Glenn v. Mathews, 44 Tex. 405; Fleming v. Pringle, 21 Tex. Civ. App. 225, 51 S. W. 553; Lewis v. Ross, 65 S. W. 504. The above measure is applied where there has been an eviction of the warrantee as to the entire tract conveyed; but where the title has not failed as to the whole, but as to only a part, the measure of damages is as stated by Judge Brown, in Hynes v. Packard, 92 Tex. 49, 45 S. W. 563, as follows:

"If the title had failed to all the land conveyed by Hynes to Packard, the measure of damages would be the purchase money with interest from the date of payment. The failure, however, being partial, * * * the rule by which to ascertain the grantor's liability under the warranty is aptly stated thus: 'The damages will bear the same proportion to the whole purchase money as the value of the part to which the title fails bears to the whole premises, estimated at the prices paid.' Phillips v. Reichert, 17 Ind. 120 [79 Am. Dec. 463]; Raines v. Calloway, 27 Tex. 678; Thomas v. Hammond, 47 Tex. 42; Morris v. Phelps, 5 Johns. [N. Y.] 49 [4 Am. Dec. 323]," etc.

[5] The contention of appellant seems to be that the proper measure of damages was not applied by the court in this case, and that by reason thereof the judgment rendered, in effect, allowing S. F. and J. P. Carter a credit of $5,000 upon their warranty, being the amount paid by them to procure for their warrantee the title of the heirs of Marinda Hyde and those in the right of such heirs, does not accord to the warrantee its rights under the law. And the contention is further made that the title of

the Fidelity Lumber Company to an undivided interest of 320 acres in the Hyde 640-acre survey has not been questioned, and has not been claimed by any one, but that Marinda Hyde's heirs appear also to have had title to an undivided interest of 320 acres of the 640-acre survey. In cause No. 3197, a part of said heirs, claiming to be all of the heirs of Marinda Hyde, brought suit to recover an entire undivided interest of 320 acres of the 640-acre survey. Deceived and misled by S. M. Johnson, the witness Mrs. D. P. Foster, who was also a plaintiff, and the Washington affidavit, and believing that such heirs were all the heirs, or stood in the right of such heirs, S. F. and J. P. Carter, recognizing their liability to the Fidelity Lumber Company as warrantors, paid to said heirs, or those standing in the right of such heirs, $5,000 to secure for their warrantee the title, as they believed, to an undivided interest of 320 acres. The payment was not made to the warrantee to discharge, or to discharge pro tanto, their warranty, and was not, in fact, paid to the warrantee at all, but to those claiming the land adversely to the warrantee, and it is therefore contended that the payment of $5,000 to secure for the warrantee the land did not entitle the warrantors to discharge from their liability for any greater amount or proportion of their liability than the quantity of the land owned by the plaintiffs, and which passed to the warrantee by the judgment in 3197, bore to the entire 320-acre undivided interest, and they illustrate this as follows: The amount received by the warrantors for the purchase price of the land, based on three dollars per thousand feet, and upon a timber estimate of four million feet upon the 640 acres, amounted to $12,000, and this, with interest added, would have been the measure of the warranty liability had the warrantee lost the entire 640 acres. On the basis upon which the purchase price was arrived at, the purchase price of an undivided interest of 320 acres would be $6,000, which with interest at 6 per cent. from the date of the guaranty and warranty of the title by S. F. and J. P. Carter, to wit, December 13, 1906, to February 15, 1913, the date of the judgment in cause No. 3197, would amount to about $8,200. Therefore, by the judgment rendered in the United States District Court and the subsequent judgment rendered in the district court of Tyler county, the heirs of Marinda Hyde, other than those sued in 3197, recovered an undivided interest of 160$^{33}/_{49}$, or a fraction of an acre more than half of the 320 acres undivided interest. The title of the warrantee having failed to say 188 acres, the warrantee was entitled, as against the warrantors, to an amount in the proportion that the price paid for the 188 acres bears to 320 acres; and as the purchase price, with interest added, for the 320 acres, as above shown, was $8,200, the proportion of the warrantors' liability for the 188 acres lost would be

a sum equal to $^{188}/_{320}$, or $4,816.56. But, it is claimed, the judgment allowed as a credit on the warrantors' liability, not the proportion that the amount paid by them for one-half of the 320 acres bore to the whole, but the entire sum of $5,000 paid by them, and discharged them from their warranty liabilities to that extent, and restricting their liabilities as to the 188 acres lost to the difference between $5,000 paid and the purchase price of the 160 acres lost, claiming that by thus restricting the warrantors' liability the warrantee could not recover $4,816.56, which was the proportionate price with interest added received by the warrantors for the 160 acres, but only the difference between the $8,200, being the price with interest added received for 320 acres, and the $5,000 paid by the warrantors for the 132 acres secured for the warrantee, which, it is claimed, is greatly less than the sum to which the warrantee is entitled.

[6] Under the fourth assignment, as above set out, the proposition is that a finding of fact by the court against the undisputed testimony is erroneous, and should be set aside. The court found that:

"There was no definite proof as to what amount was paid to the Emporia Lumber Company for the Marinda Hyde survey."

The proof of the consideration paid for the Marinda Hyde survey was established by the testimony of W. A. Vinson, who testified:

"In the deed from the Carters to the Thompson Bros. Lumber Company, the lands are mentioned, but the value of each particular tract is not mentioned. It was sold on a timber estimate, * * * and they figured the values of the land at so much per thousand feet. Generally, it was $3, I think."

Further he testified:

"The deal, as I got it from Mr. Carter, as I have stated, was based upon a timber estimate of $3 per thousand feet."

And again, he testified:

"The rate per thousand feet on that warranty, as I understood from Mr. Carter, was on a basis of $3 per thousand feet."

The answer of Thompson Bros. Lumber Company in cause No. 3197 was introduced in evidence, and contained the following allegation:

"Defendant further represents and charges that the land sued for herein by plaintiffs is a part and parcel of said 640 acres of the Marinda Hyde survey so conveyed by said Emporia Lumber Company by the deed above described, and defendant charges that said land has a growth of standing pine timber thereon aggregating 4,000,000 feet log scale, for which the defendants' warrantors paid the said Carters $12,000."

In the answer of the defendants S. F. and J. P. Carter in cause No. 3197, it is alleged:

"That this cause, an action of trespass to try title, was instituted in the district court of said Tyler county about the 14th day of June, 1912, against the said Thompson Bros. Lumber Company, for the recovery of said undivided half of said 640-acre tract of land, and the said Thompson Bros. Lumber Company ask that, in the event of a failure of title to said undivided half of said 640-acre survey, it

have judgment against these defendants for the amount of purchase money therefor paid to the said Emporia Lumber Company, which amount it alleges was $12,000, with legal interest thereon from the 2d day of July, 1906, in their respective proportions, that is, against the said J. P. Carter for one-fourth, and against the said S. F. Carter for three-fourths of the amount so paid to said Emporia Lumber Company."

The testimony, as above set out, seems to be undisputed, and in our judgment a finding would necessarily be that the amount received by the warrantors for said land, based upon a timber estimate of four million feet, at $3 per thousand, would be $12,000.

Viewed in any light, from this record, it is our opinion that the third and fourth assignments of error must be sustained.

[7] Appellants' fifth and sixth assignments of error are as follows:

(a) "The trial court erred in its finding of facts, holding that the judgment in cause No. 3197, Ewing v. Thompson Bros. Lumber Company, was one based upon a chance of title between plaintiffs in that suit and the warrantors impleaded therein, because the undisputed facts showed that the said warrantors would not have entered into said agreement of settlement nor have agreed to the entry of said consent decree had it not been represented to them and had they not believed that plaintiffs in cause No 3197 were all of the heirs or stood in the right of all of the heirs of said Marinda Hyde."

(b) "The trial court erred in its finding of facts holding that the judgment in cause No. 3197, Ewing v. Thompson Bros. Lumber Company, was one based upon a chance of title between the plaintiffs in that suit, and the warrantors impleaded therein, because the overwhelming and great preponderance of the testimony shows that the said warrantors would not have entered into said agreement of settlement, nor had agreed to the entry of said consent decree, had it not been represented to them, and had they not believed, that the plaintiffs in cause No. 3197 were all of the heirs, or stood in the right of all of the heirs of said Marinda Hyde."

Appellants assert the proposition that a finding of fact by the court against the undisputed testimony is erroneous, and should be set aside, and, we are of opinion that the testimony in this case was practically undisputed, and in our judgment the assignment is and must be sustained.

In the first place, we do not believe that the evidence shows the compromise to have been a chance of title. On January 21, 1913, S. F. Carter wrote Presley K. Ewing, as follows:

"I have been delayed in answering your favor of the 13th inst. on account of the pressure of business.

"I have a letter from Judge Matthews stating that Mr. Johnson had advised him that he would proceed to take depositions showing that the plaintiffs are the only heirs of Marinda Hyde, and when this is done I presume that will cover the point at issue.

"All we want to know is that when we have paid you the $5,000.00 on your claim we will not be bothered about this title later on.

"Furthermore, as we expect the American Exchange National Bank of Dallas to make good on their warranty, their pro rata, which will be something over $1,400.00, that bank will naturally want to know that there will be no further litigation.

"As soon as the matter is arranged to the sat-isfaction of Judge Matthews, my attorney, I am ready to make payment."

On December 12, 1912, Presley K. Ewing wrote J. C. Matthews, of Lampasas, Tex., as follows:

"In Ewing et al. v. Thompson Bros. Lumber Company, Marinda Hyde survey, Tyler county, answering yours of 9th inst., I am inclosing to you a letter written to you by Mr. S. M. Johnson, which he forwarded to me for approval before mailing, and which I do approve, to the effect that he would settle for $20.00 per acre, being practically one-third of the value of the land, although we regard our title as clear as yours."

The court found:

"This consent judgment was pursuant to an agreement exclusively between the plaintiffs in the former suit and the warrantors of title for what was in effect a chance of sale of their interest by way of compromise with the distinct terms stipulated by the warrantors, as the deal would be consummated only in the event of a verbal report from their attorney, Judge J. C. Matthews, upon independent investigation into the title including heirship."

As opposed to this finding, Judge J. C. Matthews testified:

"As to what induced me to make a settlement of the case for S. F. and J. P. Carter and the American National Bank of Dallas, well, I believed that the case would probably come to trial pretty soon if we didn't settle, and I believe that if we ever went to trial we would lose half of the land, and I thought that the depositions that we had examined and the affidavits furnished me in connection with the Silas M. Johnson statement was such that we should make a compromise. I believe these to be all of the heirs or I would not have made a settlement."

Further he says:

"I did not understand that Mr. Johnson and myself were looking after the question of heirship. I understood that Mr. Johnson was looking after the question of heirship."

He further testified:

"I did not understand that there were any lost heirs of Marinda Hyde. I understood that I was getting all the heirs."

And also:

"My idea was, at the time I filed suit, that we had all the heirs of Marinda Hyde. At the time of the settlement I believed that my associates and myself had before the court all the heirs of Marinda Hyde."

In this connection, W. A. Johnson (not S. M. Johnson), the attorney who filed the original petition for the plaintiffs in cause No. 3197, testified:

"My idea was, at the time I filed the suit, that we had all of the heirs of Marinda Hyde. * * * At the time of the settlement I believed that my associates and myself had before the court all of the heirs of Marinda Hyde."

Joe W. Thomas, attorney who approved the settlement in behalf of the Fidelity Lumber Company in cause No. 3197, testified:

"I did not learn that these plaintiffs were not all the heirs of Marinda Hyde until this Beaumont suit was filed."

He further testified:

"When the case came on for trial or settlement, I was not here and had nothing to do with the negotiations whatever. I understood all the time that Judge Matthews was handling that part of it and it was not expected of me.

I recollect, however, that when the judgment was written up that I O. K.'d the judgment. Judge Matthews came to my office one day at noon and left there some interrogatories and affidavits, and told me, 'Here are two sets of depositions and two or three affidavits,' and he left them on the table by the machine, and also the draft of the judgment probably. At any rate, he told me that if I wanted to look over them to do so, but that he was of opinion from the evidence that they had all the heirs and it was all right. I was in the trial of another case at the time, and my not receiving any fee and not being employed in this case, as I considered it, I did not look them over. I did not examine any of the testimony, either the depositions or the affidavits."

Again he says:

"I was not interested with reference to the question of heirs. No, I did not go into the question of heirship. Judge Matthews told me that he had them all there, and that was the reason for the release of the warranty."

Wm. A. Vinson, the attorney who filed the answer of Thompson Bros. Lumber Company in cause No. 3197, testified:

"I understood that all of the heirs were represented when I approved the disposition of that case at the time that Judge Matthews reported to me on his return from Woodville that he had settled the case."

C. L. Carter, who, as attorney for the Fidelity Lumber Company in cause No. 3197, had active charge of the case, testified:

"I had no knowledge that there was any question as to the Fidelity Lumber Company having acquired title to the entire undivided one-half interest in the Marinda Hyde survey until this suit was filed in the federal court in Beaumont."

The only evidence as to "chance of title," and upon which the court must have based its findings, if upon any evidence at all, is found in the testimony of Judge J. C. Matthews and Judge Ewing. Judge Matthews, in his cross-examination by Mr. Ewing, testified:

"I have been practicing law in Texas a long time, in land and other litigation. Yes, I have in my experience come across cases in which heirs were seeking to recover on an ancient claim of title. I cannot recollect any specific instance, but I think it is a common thing for there to be heirs that you can find no trace of, that have been lost sight of. Yes, it is a common occurrence upon adjustment to be made of the chance that they will never turn up. I don't know how common or frequent such occurrences happen, but it is done. I don't know how many instances I have known. I cannot recollect any, but I have known instances. I don't know how frequently it is, but it happens."

Mr. Ewing testified:

"I will say that I do know that it is a common thing in this country that unknown heirs are dropped out, and a settlement made, and money paid, with the understanding that there may be some heirs that they don't know where to find them, and a chance settlement is made upon the idea that they will never turn up. I know of one case in Jefferson county, involving a league of land, where three or four times successively other heirs turned up; and I know another case involving a league where some heirs were dropped out and never turned up; and I know another in Angelina county, in which the firm of Terry, Cavin & Mills were engaged as attorneys, and made a settlement where unknown parties were not before the court, paying the money. It was perfectly satisfactory to chance it. The instances are numerous where the lawyers and parties settle these matters and leave out heirs. I am perfectly certain of this, that I didn't know or have any reason to believe, until long after the settlement was consummated and the money distributed, that there were outstanding heirs of Marinda Hyde who were not plaintiffs in the suit No. 3197. Understand, your honor, I don't say there were any such outstanding heirs that they didn't know of or were not willing to take the chance of having left out. I do not, of my own knowledge, know about that. I have no knowledge of it."

The original petition in cause No. 3197, as well as the amended petition, sued for an undivided interest of 320 acres of land.

On September 13, 1912, J. C. Matthews wrote Mr. Ewing a letter, which is the beginning, so far as this record shows, of the negotiations looking toward a settlement:

"The plaintiffs in that case (Ewing v. Fidelity Lumber Company, No. 3197), as I understand, claim an undivided half of said survey. I would be pleased to know the amount of your interest in the survey, whether the heirship of those from whom you purchased can be clearly established, and what is the least amount you will take for your interest in the land."

On December 9, 1912, Matthews writes S. M. Johnson:

"If any compromise is effected, I will want to know that Mr. Ewing is the purchaser from some of the heirs of Marinda Hyde, and that all the other heirs are parties to the suit."

In response to this last letter, Johnson writes on December 11, 1912, to Judge Matthews, the letter which first went to Mr. Ewing for his approval, and which Mr. Ewing did approve, in which he makes the following declaration:

"If he (Mr. Ewing) thinks proper to send you this letter, as far as me and Judge Johnson and our clients are concerned, we think that we would consider a proposition of $20 per acre, provided we will not have to go to the expense of taking further depositions to prove heirship, of course, in event of settlement we would furnish you affidavits of heirship. There is no shadow of a doubt that our clients are entitled to one-half of this survey, 320 acres. If there is a prospect of your recommending this proposition for settlement, write me at once, because I was on the eve of preparing several lots of depositions to prove their heirship, and this is the only thing we have to do in this case to be ready for trial."

On December 12th Mr. Ewing writes to Judge Matthews inclosing the letter from Mr. Johnson, and stating his approval of the settlement at $20 per acre, and stating: "We regard our title as clear as yours."

On the 24th of December, Matthews writes Johnson:

"I note what you say in regard to taking the depositions of witnesses to prove the intermediate heirship, and I think it is important that you take them, because we want to be sure that the heirs with whom we are settling are in fact the heirs. And because we have a warrantor to deal with, and he, as well as we, wants to know that there are no other heirs with whom we will have to litigate in the future.

"I am sorry to have put you to this trouble, which may seem to you to be unnecessary, but I feel that it is important to my client that you prove up your case thoroughly."

On the 10th of January, 1913, Judge Matthews writes Judge Coke as follows:

"The settlement made with the plaintiffs requires that they produce satisfactory evidence that they are the only heirs of the patentee. I have insisted that they produce this evidence by taking the testimony by depositions in this case, and plaintiff's counsel has written me that they will take the depositions at once."

On January 13, 1913, Mr. Ewing writes S. F. Carter, stating that:

The agreement was to pay $5,000 in settlement, "besides costs of court, provided the showing of heirship as claimed by us was satisfactory to Judge J. C. Matthews, your attorney.

"I did not suppose, as now advised by my associate, Mr. S. M. Johnson, that Judge Matthews would require us to make legal proof of heirship in the case by deposition, but that he would require such showing by affidavit as is usual in the case of an attorney examining a title. It was largely to avoid the expense and trouble of court work that I was induced to settle at the figures named.

"We shall try, however, without waiving our position in the premises, to satisfy Judge Matthews, in every reasonable way, but the position he takes, if I am correctly advised, is unusual."

On January 21, 1913, S. F. Carter replies to Mr. Ewing's letter of the 13th just quoted, in which Carter advises Ewing that:

He understood that Johnson would proceed to take depositions "showing that the plaintiffs are the only heirs of Marinda Hyde, and when this is done, I presume that will cover the point at issue.

"All we want is to know that when we have paid you the $5,000 on your claim we will not be bothered about this title later on."

On February 5th, Mr. Ewing writes Judge Matthews:

"I understand my associate, Mr. S. M. Johnson, will have the proof of heirship on hand by the 12th instant, the date of the setting of the case as advised to me."

On February 8, 1913, S. M. Johnson writes Judge Matthews, reciting what had been done in the way of making up proof of heirship, and stating as follows:

"I was in Houston day before yesterday, and went over this matter with Mr. Ewing, and he was so well satisfied that there is nothing between us that would prevent a settlement as agreed upon between us, that he has made other engagements so that he will not be at Woodville on the 13th."

The judgment in cause No. 3197, Ewing v. Thompson Bros. Lumber Company, is in part as follows:

"After hearing the pleadings and evidence, together with admissions of fact made in open court, it appears to the court that since the last term of this court" "the said S. F. and J. P. Carter have entered into a compromise of this suit with the plaintiffs," "and have purchased from plaintiffs the land in controversy in said suit and hereinafter described, and have paid plaintiffs for said land the sum of five thousand dollars." "The payment of such purchase money being in open court admitted by the plaintiffs," "and it further appearing to the court" "that said compromise and purchase by said S. F. and J. P. Carter inures to the benefit of said Fidelity Lumber Company, which is by reason of said facts entitled to judgment for said land, it is therefore, by the court, considered, ordered, and adjudged," "that the said defendant the Fidelity Lumber Company do have and recover of and from plaintiffs herein" "the title and possession of the land described in the plaintiff's amended petition, and which is one undivided half of a tract or survey of land described as follows: All that certain 640 acres survey of land situated in Tyler county, Tex., patented to the heirs of Marinda Hyde."

Yet it is contended that these people bought a chance of title and paid $5,000 and $15 an acre for the same. Quite a large number of letters are in evidence, and prove to our minds, conclusively, that the proposition on the part of S. F. Carter and his attorneys was to secure an absolute title, and, as said in one of the letters, "they want to know for certain that all of the heirs of Marinda Hyde are before the court, and that they get a perfect title." The trial court perhaps uses the words "chance settlement," but this record shows to the contrary. In our opinion, there is not a single peradventure of a doubt that the finding of fact by the court was erroneous. Therefore the assignments of error must be sustained.

The seventh, eighth, and ninth assignments of error are as follows:

(a) "The trial court erred in its finding of fact that the averments of fraud in plaintiffs' petition were not sufficiently sustained by the evidence to entitle them to relief, because the undisputed proof showed that S. M. Johnson, one of the attorneys representing plaintiffs in said cause No. 3197, and plaintiffs therein, other than the said Presley K. Ewing, falsely represented and testified that the plaintiffs in said suit No. 3197 were all of the heirs or stood in the right of all the heirs of Marinda Hyde, whereas in truth and in fact they represented an interest less than one-half of the heirs of Marinda Hyde, the plaintiffs, other than Presley K. Ewing, knowingly concealing from said plaintiffs in the present cause the existence of other heirs of Marinda Hyde than those who were plaintiffs in said cause No. 3197."

(b) "The trial court erred in its finding of fact that the averments of fraud in plaintiffs' petition were not sufficiently sustained by the evidence to entitle them to relief, because the overwhelming preponderance of the evidence shows that S. M. Johnson, one of the attorneys representing the plaintiffs in said cause No. 3197, and plaintiffs therein other than said Presley K. Ewing falsely represented and testified that the plaintiffs in said suit No. 3197 were all of the heirs of Marinda Hyde, whereas in truth and in fact they represented in interest less than one-half of the heirs of Marinda Hyde, the plaintiffs other than the said Presley K. Ewing, knowingly concealing from said plaintiffs in the present case, the existence of other heirs of said Marinda Hyde than those who were plaintiffs in said cause No. 3197, said findings being against the great weight and preponderance of the testimony, and manifestly wrong."

(c) "The trial court erred in its finding that the Fidelity Lumber Company had suffered no prejudice, and would suffer no prejudice, by the discharge of the warrantors only to the extent of their payment of the sum of $5,000 made under the terms of the decree in said cause No. 3197, because such finding is equivalent to compelling the Fidelity Lumber Company to accept the bargain made by the trial court, and not permitting it to bargain for itself, and to receive the benefits thereof; that at the time said decree was entered in said cause No. 3197 the belief existing was that the Fidelity

Lumber Company was acquiring the entire title to the 320 acres of land, when in fact it acquired by said decree only approximately 145 acres."

Owing to the length of this opinion, it will be best, perhaps, not to discuss each of these assignments in detail, and the testimony with reference thereto. Suffice it to say, in our judgment, each of the assignments must be sustained.

It follows, from the views above expressed, that this court is of opinion that the trial court was in error in refusing to wholly set aside and cancel the judgment of the district court of Tyler county rendered in cause No. 3197, P. K. Ewing et al. v. Thompson Bros. Lumber Company et al., as was prayed by appellants in this cause, and for that error the trial court's judgment in this cause is reversed, and judgment is here now rendered by this court setting aside and canceling in toto the judgment in said cause No. 3197, P. K. Ewing et al. v. Thompson Bros. Lumber Company et al.

We find in the record in this cause certain cross-assignments of error by appellees Presley K. Ewing, S. F. and J. P. Carter, and American Exchange Bank, and these assignments have been considered, and the conclusions above expressed have the effect to overrule them, and it is so ordered.

The record further discloses that those of appellees here who were plaintiffs in said cause No. 3197, P. K. Ewing et al. v. Thompson Bros. Lumber Company et al., by way of alternative prayer in this cause below, sought judgment in their favor as against all the other parties to this suit for title and possession of a one-half interest in the land that was in controversy in said cause No. 3197, in the event the trial court should render judgment setting aside and canceling the judgment in that cause, and also for partition of their respective interests as between themselves; and such appellees have asked the same relief at the hands of this court, in the event this court should conclude that the judgment in said cause No. 3197 should be canceled and set aside. The trial court, having refused to set aside the judgment in said cause No. 3197, did not, of course, grant such relief; and, while it may be that the record in this cause is such that this court might be authorized to grant the prayer of these appellees to the extent of a judgment in their favor as against all other parties for an undivided interest in said land, we have concluded not to do so, in view of the peculiar issues in this case, and the attitude in which the parties would be placed; and, as to the prayer for partition, we are certain that the record is not in such shape that we could grant it. With these views, we have thought it best to remand the cause to the trial court for further proceedings relative to this cross-action, and for such relief in that connection as any and all the parties may show themselves entitled to receive. In this connection, we do not hesitate to say that the trial court hereafter, in disposing of the cross-action of the above-mentioned appellees for their interest in the land, which was the subject-matter in said cause No. 3197, and the partition of such interests as between such appellees, should let its judgment be such as will protect, as far as possible, S. F. and J. P. Carter and the American Exchange Bank for the money paid out by them to said appellees, as shown by the judgment in said cause No. 3197, and that this should be done by decreeing an equitable lien upon the interest of said appellees in said land, if necessary for such protection, if such relief shall be requested by the said Carters and said bank. By what we have said in this immediate connection, we do not mean to be understood as intimating that a decree by the trial court fixing such equitable lien on the interests of said appellees in said land would be the only relief that the said Carters and said bank might be entitled to receive, should they see proper to pray for other and additional relief.

We deem it unnecessary, and in fact it may be improper for this court, to make any further suggestions to the trial court in disposing of this cause hereafter, because we cannot tell what the state of the pleadings may be when the cause shall be again reached in that court, and we feel that we have made the only disposition of the cause as we are compelled and authorized to make upon the pleadings and evidence as now reflected by the record.

The judgment of the trial court is therefore reversed and rendered in part, as hereinbefore indicated, and in part the cause is remanded for further proceedings, with the suggestions above indicated.